J-A02016-15 and J-A02017-15

2015 PA Super 150

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| WAYNE MCNEAL | |
| Appellant | No. 1771 EDA 2013 |

Appeal from the Judgment of Sentence of May 31, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0500911-2005

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| WAYNE MCNEAL | |
| Appellant | No. 1775 EDA 2013 |

Appeal from the Judgment of Sentence of May 31, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0008159-2011

BEFORE: PANELLA, J., LAZARUS, J., and WECHT, J.

OPINION BY WECHT, J.:                                          **FILED JULY 16, 2015**

Wayne McNeal appeals from two judgments of sentence imposed upon him by the Honorable Chris Wogan, Judge of the Court of Common Pleas of Philadelphia County. We consolidate these cases *sua sponte*. Finding

numerous instances of trial court error, we vacate those judgments of sentence, and we remand these cases for further proceedings.

On June 28, 2005, at CP-51-CR-0500911-2005, McNeal pleaded guilty to one count of robbery, 18 Pa.C.S. § 3701. Pursuant to an agreement with the Commonwealth, McNeal was sentenced to two and one-half to five years' incarceration, to be followed by five years of probation. The Honorable Earl Trent, Judge of the Court of Common Pleas, accepted the plea, and sentenced McNeal.

On July 1, 2011, at CP-51-CR-0008159-2011, McNeal was arrested and charged with burglary, 18 Pa.C.S. § 3502, criminal trespass, 18 Pa.C.S. § 3503, criminal mischief, 18 Pa.C.S. § 3304, and criminal attempt—theft, 18 Pa.C.S. §§ 901, 3921. These charges were assigned for disposition to Judge Wogan. The charges also formed the basis for a potential violation of the probation imposed by Judge Trent at CP-51-CR-0500911-2005. Judge Trent scheduled a probation violation hearing for July 29, 2011. However, the hearing was postponed until the burglary and related charges were resolved.

On April 11, 2013, the parties appeared before Judge Wogan for trial. However, the case was continued to the following day because the jury panel had been released before voir dire could commence. Nonetheless, on April 11, the Commonwealth presented McNeal with a plea offer. The Commonwealth offered to agree to a sentence of three and one-half to seven years' incarceration if McNeal pleaded guilty to the burglary charge.

The proposed sentence fell within the mitigated range of the sentencing guidelines. Notes of Testimony ("N.T."), 4/11/2013, at 4-5. Judge Wogan explained to McNeal the potential maximum sentences that he could receive if he went to trial and lost. *Id.* at 4-7. McNeal rejected the plea offer. *Id.* at 11. Judge Wogan urged McNeal to reconsider. Specifically, Judge Wogan told McNeal that he "should think about this overnight. You may not believe me that you will get 15 to 31 years. Maybe you should ask people around the jail if I would do that." *Id.* at 12-13.

On the following day, the parties appeared before Judge Wogan. The parties and Judge Wogan discussed the grading of the criminal mischief charge. One of the allegations against McNeal was that, in perpetrating the alleged burglary, he caused damage to the front door of the home that he purportedly entered. The assistant district attorney stated that she was "inclined to proceed on [the criminal mischief charge] as a summary." N.T., 4/12/2013, at 3. Judge Wogan commented that it was his understanding that prosecuting that crime as a summary, with Judge Wogan sitting as the finder of fact and rendering a verdict after the jury had ruled on the indictable offenses, was "permissible." *Id.* Additionally, Judge Wogan volunteered that a summary is a conviction that would "be a violation of the probation that I am now supervising." *Id.* Although Judge Wogan did not elaborate on the issue at that juncture, this was the first time that he revealed to the parties that he had assumed jurisdiction over the probation violation case that initially was assigned to Judge Trent.

The parties met again before Judge Wogan on April 15, 2013, after defense counsel had requested that a psychiatric evaluation be performed on McNeal. Judge Wogan readily agreed that an evaluation was necessary, "especially when he turned down a 3 and a half year sentence and could get 12 and a half or more." N.T., 4/15/2013, at 3.

On April 18, 2013, the parties again met before Judge Wogan for more pretrial discussions. Once again, Judge Wogan informed McNeal of the terms of the proffered plea bargain. This time, however, Judge Wogan explained that the three and one-half to seven years offer encompassed the probation violation as well. Judge Wogan explained the offer, and the unconventional negotiations that occurred between the court and the parties, as follows:

> I spoke with your attorney. And if you plead guilty on the criminal trespass, what you would get from me would be three-and-a-half to seven years – that is a promise I made – on everything including the [violation of probation]. I just want to make sure you understand that. That would have probation to follow, and that is less of a sentence that I normally think would be appropriate. Because I wanted to make it three to ten, but after negotiating with the attorneys I decided three to seven with probation to follow would be fair.[1] Just so you

_____

[1] Among the numerous errors by Judge Wogan in this case is his admission that he negotiated a plea bargain with the parties. Prior versions of our Rules of Criminal Procedure explicitly prohibited such participation by a trial judge. Although the current version of Pa.R.Crim.P. 590 no longer contains a blanket prohibition barring judges fom engaging in plea negotiations, the Comment to that rule notes that the ban was removed to permit, for example, a judge to "inquire of defense counsel and the attorney for the Commonwealth whether there has been any discussion of a plea

*(Footnote Continued Next Page)*

understand, that is everything. You see, I could give you 7-1/2 to 15 years for violating my probation.[2] I'm not going to do that.

N.T., 4/18/2013, at 3-4. McNeal rejected the offer for a second time. Judge Wogan reacted as follows: "All right. Well, then you may end up doing seven years and nine months instead. If you don't see the logic in that, that's [*sic*] whatever high school you went to, they didn't do a very good job." ***Id.*** at 5.

The parties and the court then turned their attention back to the issue of whether the criminal mischief charge should continue to be graded as a misdemeanor, or whether it should be amended to a summary offense. The following exchange occurred between Judge Wogan and the parties:

| THE COURT: | All right. And the Commonwealth is holding off the criminal mischief as a summary which I will decide whether you committed criminal mischief when the jury trial is over. |
|---|---|

*(Footnote Continued)* ────────────

agreement, or to give counsel, when requested, a reasonable period of time to conduct such a discussion." Pa.R.Crim.P. 590 Cmt. The Comment notes that "[n]othing in this rule, however, is intended to permit a judge to suggest to a defendant, defense counsel, or the attorney for the Commonwealth, that a plea agreement should be negotiated or accepted." ***Id.*** Judge Wogan's actions ran afoul of both aspects of this proviso. He not only encouraged McNeal to take a plea, and participated in the actual plea negotiations; he also repeatedly criticized McNeal for not taking the deal.

[2] This is the second time that Judge Wogan indicated that he had assumed jurisdiction over Judge Trent's probation case, this time going as far as calling it "my" probation, even though the case originated with Judge Trent.

[DEFENSE COUNSEL]: I do have an objection to that.

THE COURT: All right. Anything you want to say about that or generally?

[DEFENSE COUNSEL]: My objection would be this. The complainant testified – I have a number of objections. But first one is complainant testified that previously the damage to the door was $908. It is misdemeanor of the third degree, not a summary offense.

THE COURT: Right.

[DEFENSE COUNSEL]: And so by moving on the summary offense [the] Commonwealth is basically precluding the complainant from getting restitution as to the cost.

THE COURT: I didn't know you represented plaintiffs [*sic*] here.

\* \* \*

[DEFENSE COUNSEL]: And also, it is my belief that the criminal trespass, breaking the door, is necessary to, cross criminal mischief breaking a door is necessary to a felony to criminal trespass conviction which involves breaking in the first place. So that it is a lesser included offense and it is a necessarily included offense. And because of that fact he cannot be sentenced for both offenses because the breaking is a requirement of the criminal trespass felony two.

THE COURT: Well, we will see. We will see.

[DEFENSE COUNSEL]: Well, the nearest case I can find to that . . .

THE COURT: It is a moot point. It is a moot point. The best that can happen to him – the best that can happen to you – all right – the best that can happen to you and your

- 6 -

attorney's argument would be meaningless is somehow the jury finds you not guilty of criminal trespass. Then his argument that you can't be sentenced for criminal mischief falls away because I can still sentence you for criminal mischief if I find beyond a reasonable doubt that you broke the door.

[DEFENSE COUNSEL]: Well, my position on that is that you can't. Because if the jury acquits --

THE COURT: You are so wrong on that.

[DEFENSE COUNSEL]: --him of criminal trespass --

THE COURT: You are so –

[DEFENSE COUNSEL]: -- then necessarily --

THE COURT: -- you are so far from what the law is. The law is that even the jury can do something diametrically opposed to what I do. And the cases actually say it doesn't matter because maybe this was a jury that was utilizing jury nullification. Maybe their false sense – and they use the word "leniency" and I never used the word – leniency compelled them to do something which does not bound the judge. You have no support in Superior Court. To even think of one senior judge in Superior Court, he wouldn't go out on a limb.

[DEFENSE COUNSEL]: And also the fact that this would generate [a] probation violation, which up until last week would have been [a] violation of Judge Trent, but is now [a] violation of Your Honor.

THE COURT: Reasons of judicial economy and efficiency, he is on my probation now.

[DEFENSE COUNSEL]: Well, for reasons of judicial economy, you can have one trial instead of two.

THE COURT:    You will see how efficient I am if we have a summer trial. We will do it real quickly.

N.T., 4/18/2013, at 5-9.

McNeal's jury trial began and ended on the following day, April 19, 2013. Following deliberations, and despite Judge Wogan's apparent disbelief that the jury could or would do so, the jury found McNeal not guilty of all of the crimes. This left the criminal mischief charge, now graded as a summary offense, for disposition by Judge Wogan. N.T., 4/19/2013, at 126-27. Regarding that summary offense, the Commonwealth offered no evidence, simply adopting that which had been presented to the jury. Judge Wogan chose to disagree with the jury's apparent credibility determinations. He found "the victim here to be credible," and "found the defendant to be a liar." N.T., 4/19/2013, Motion Volume I, at 3. He found McNeal guilty of the summary offense.

At the time he entered his verdict, Judge Wogan did not reveal that he had relied upon evidence not of record in assessing whether the Commonwealth proved beyond a reasonable doubt that McNeal had committed the criminal mischief. On May 31, 2013, he did so. That day, before imposing sentence on McNeal, Judge Wogan confessed to considering a letter that was sent to him by McNeal but had never been offered into evidence by the Commonwealth:

However, remember, Mr. McNeal wrote me a letter, as you recall. I thought it was a pretty darn good letter. And in it he

- 8 -

said he wasn't guilty of a burglary. By the way, I agree with that.

* * *

He was smart enough to say in his letter, however, [that] there is evidence of criminal trespass. That's an understatement.

N.T., 5/31/2013, at 15-16. Judge Wogan revealed that his verdict differed from that of the jury because he "had additional information that the jury didn't have." *Id.* at 17.

Defense counsel insisted to Judge Wogan that, because the letter wasn't part of the trial record, Judge Wogan was not permitted to consider it. Judge Wogan responded as follows:

Then you have another appellate issue, because yes, I did use the letter. I had additional information. We talked about the letter. I gave you a copy and the Commonwealth. If you don't like defendants writing me letters, then maybe your office should counsel them early on. But he said there was evidence of criminal trespass, and yes, I agree. That was an understatement.

* * *

Well, maybe you have an appellate issue because I used the letter and that was information that the jury didn't have but I had. It's a tacit admission.

*Id.* at 17-18. In his Pa.R.A.P. 1925(a) opinion, Judge Wogan declared that he "was the finder of fact on the criminal mischief summary, and was not about to ignore a letter voluntarily sent by [McNeal] to [the] court . . . ." Trial Court Opinion ("T.C.O."), 4/15/2014, at 11.

Prior to sentencing, McNeal filed a motion for extraordinary relief. In that motion, McNeal challenged, *inter alia*, Judge Wogan's assumption of

jurisdiction over Judge Trent's probation case. Before sentencing, Judge Wogan described the circumstances that led to his taking the probation case from Judge Trent, as follows:

> [B]y the way, the conversation I had with Judge Trent saying I reached out to him, well, actually, Judge Trent called me about advice on another case. He had a big insurance fraud case in his room and he called me. He was having a serious problem and asked me for my advice. Luckily, it worked out for both of us. The advice I gave him he was able to do what he wanted to do. And in the course of talking to Judge Trent, I said, I've got a case coming up. We're trying to get a jury. I think he's on your probation. Do you want me to handle it? I don't know what's going to happen yet. He said, Sure. I give cases up all the time.

N.T., 5/31/2013, at 7. Judge Wogan also repeatedly criticized the public defender's office for objecting to the procedure he imposed in this case. According to Judge Wogan, the transfer of cases occurs quite frequently in the Court of Common Pleas of Philadelphia County, without any objection from the public defender's office. *Id.* at 6-8. Apparently, Judge Wogan believed that, because no other attorney from the public defender's office had objected previously, defense counsel in this case was precluded from doing so. Judge Wogan denied McNeal's motion for extraordinary relief.

At the conclusion of the sentencing hearing, Judge Wogan informed McNeal that he was "going to . . . give you every day I can give you today." *Id.* at 25. Judge Wogan then proceeded to sentence McNeal to thirty to sixty months' incarceration on the probation violation, followed by a consecutive term of one and one-half to three months on the summary

- 10 -

criminal mischief conviction. McNeal filed post-sentence petitions to vacate the judgment of sentence and to reconsider the sentence. Judge Wogan denied both motions.

On June 17, 2013, McNeal filed a timely notice of appeal. In response, Judge Wogan directed McNeal to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). McNeal filed a concise statement on July 31, 2013, but noted that certain volumes of testimony had not yet been produced. Nonetheless, Judge Wogan issued an opinion pursuant to Pa.R.A.P. 1925(a) on August 23, 2013. On October 28, 2013, this Court remanded the matter to Judge Wogan, and granted McNeal the right to file a supplemental concise statement once all of the transcripts had been produced. On February 6, 2014, McNeal filed a supplemental concise statement. On April 15, 2014, Judge Wogan filed a supplemental Pa.R.A.P. 1925(a) opinion.

In case number 1771 EDA 2013, McNeal raises the following issues for our review:

1. Did not the trial court abuse its discretion and violate the Rules of Criminal Procedure when it sought out and obtained authority over [McNeal's] probation violation case, which originated in front of another sitting judge, without consent of the parties?

2. Did not the trial court err when it found [McNeal] in direct violation of his probation where the underlying conviction, which was the basis for the violation, was illegal?

3. Did not the trial court abuse its discretion when it imposed the maximum sentence allowed by law where the sentence was manifestly excessive and unreasonable, where the

sentence far surpassed what was necessary to foster [McNeal's] rehabilitative needs and where the sentence was a product of partiality, bias and ill will?

4. Did not the trial court violate [McNeal's] right to due process under Article I, Section 9 of the Pennsylvania Constitution and the 5th and 14th Amendments [to] the United States Constitution where it: sought out and obtained authority over [McNeal's] probation case; attempted to coerce [McNeal] into pleading guilty; usurped the authority of the jury; rendered a verdict based on facts not in evidence; imposed the maximum sentenced allowed by law; and failed to maintain impartiality throughout the course of the proceedings.

Brief for McNeal (No. 1771 EDA 2013), at 4.

At No. 1775 EDA 2013, McNeal presents the following additional questions for our consideration:

1. Did not the trial court err and violate [McNeal's] right to a trial by jury when it permitted the criminal mischief charge, originally graded as a misdemeanor, to be reduced to a summary offense, severed from the remaining charges, and submitted to the court for a verdict where the sole purpose for doing so was to circumvent the authority of the jury and when the court, in fact, rendered a verdict contrary to the clear pronouncements of the jury?

2. Did not the trial court err when it considered facts not in evidence, to wit: the contents of a letter written by [McNeal] that was not presented as evidence during the trial, when deliberating and rendering a verdict on the criminal mischief charge?

3. Did not the trial court violate [McNeal's] right to due process under Article I, Section 9 of the Pennsylvania Constitution and the 5th and 14th Amendments [to] the United States Constitution where it: sought out and obtained authority over [McNeal's] probation case; attempted to coerce [McNeal] into pleading guilty; usurped the authority of the jury; rendered a verdict based on facts not in evidence; imposed the maximum sentence allowed by law; and failed to maintain impartiality throughout the course of the proceedings?

Brief for McNeal (No. 1775 EDA 2013), at 3.

The issues presented by McNeal in his two appeals intertwine at various points. That is, the resolution of certain issues from one case will impact our analysis of issues from the other case. Some issues we will not need to address at all. With that primer, we begin our discussion with the first issue presented by McNeal in case number 1771 EDA 2013.

In this issue, McNeal maintains that Judge Wogan erroneously assumed control over the probation case that originated from his guilty plea before Judge Trent. McNeal contends that Judge Wogan's unilateral action violated Rule 700 of the Pennsylvania Rules of Criminal Procedure. We agree.

When we consider an appeal from a sentence imposed following the revocation of probation, "[o]ur review is limited to determining the validity of the probation revocation proceedings and the authority of the sentencing court to consider the same sentencing alternatives that it had at the time of the initial sentencing. 42 Pa.C.S. § 9771(b)." **Commonwealth v. Fish**, 752 A.2d 921, 923 (Pa. Super. 2000). Revocation of a probation sentence is a matter committed to the sound discretion of the trial court, and that court's decision will not be disturbed on appeal in the absence of an error of law or an abuse of discretion. **Commonwealth v. Smith**, 669 A.2d 1008, 1011 (Pa. Super. 1996).

We have uncovered no case precedent that addresses McNeal's argument precisely. In the main, the parties' duel on this point consists of

McNeal arguing that there is no case law or statute that would permit a trial judge to assume control over another judge's case, while the Commonwealth maintains that there is no legal authority that prohibits a judge from doing so.[3] McNeal relies primarily upon Pa.R.Crim.P. 700, which we discuss in more detail immediately below, and which facially applies to original sentencing. For the reasons that follow, we believe that McNeal's reliance upon Rule 700 is a more sound approach than the Commonwealth's, as the latter would afford trial judges unbridled and essentially unchallengeable authority to shuffle cases between themselves without the knowledge, consent, or opportunity to be heard of the parties.

The parties correctly observe that no rule of procedure or case law either permits or prohibits a judge specifically from assuming control over a probation case supervised by another judge. Nonetheless, Rule 700 provides that "the judge who presided at the trial or who received the plea of guilty or *nolo contendere* shall impose sentence unless there are extraordinary circumstances which preclude the judge's presence."

_____

[3] The Commonwealth also argues that McNeal has waived the issue because he did not object when Judge Wogan made two passing references to the fact that he had taken control over Judge Trent's probation case. ***See*** Brief for the Commonwealth (No. 1771 EDA 2013) at 10-11 (citing ***Commonwealth v. Duffy***, 832 A.2d 1132, 1136 (Pa. Super. 2003); Pa.R.A.P. 302(a)). We decline to find waiver in this instance, because McNeal raised the issue in his motion for extraordinary relief, which was filed before Judge Wogan sentenced McNeal on the probation violation. Hence, the issue was preserved, and Judge Wogan was afforded ample opportunity to consider (and to reconsider) and to rule on the objection.

Pa.R.Crim.P. 700(a). The use of the word "shall" in the language of the rule evinces Pennsylvania's general disinclination to permit different judges to try and to sentence a defendant. This policy recognizes the obvious value of a judge who "is in the best position to view a defendant's character, defiance or indifference, and the overall effect and nature of the crime. When formulating its order, the sentencing court must consider the nature of the criminal and the crime." *Commonwealth v. Koren*, 646 A.2d 1205, 1208 (Pa. Super. 1994) (internal citations omitted). It is axiomatic that the judge who presides over the trial, or who accepts a guilty plea based upon a recitation of the facts underlying the pleaded-to crime, is the judicial officer best equipped to assess the nature of the defendant and the crime itself before imposing sentence.

Rule 700 does not state that its terms apply to sentencing following a probation revocation. However, our General Assembly has instructed that, upon a probation revocation, "the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing." 42 Pa.C.S. § 9771(b). In other words, in practical effect, a judge imposing sentence after finding that a defendant has violated probation is no different from a judge imposing sentence in the first instance. For this precise reason, we discern no principled difference between a judge imposing an original sentence and one imposing a probation violation sentence, and certainly no difference meaningful enough to exempt the latter from the dictates of Rule 700.

Pursuant to Rule 700, Judge Trent was the judge who "received the plea of guilty," and Judge Trent is the one who "shall impose sentence." Only upon "extraordinary circumstances" is another judge permitted by the terms of the rule to impose a sentence. Having combed the record, we observe no such circumstances, whether extraordinary or even pedestrian. There is no statement, not even an offhand comment or aside, to suggest that Judge Trent was away, ill, or unavailable to address his docket. We find no circumstances that would permit Judge Wogan to reach out and take control from Judge Trent over McNeal's probation case. Only the consent of both parties would permit such a maneuver. As noted earlier, Judge Wogan initially revealed that he had assumed jurisdiction over the case only in passing, while the parties were discussing with the court whether the criminal mischief charge should be graded as a misdemeanor or as a summary offense.

As noted, when Judge Wogan finally addressed the events that led him to take over that portion of McNeal's case, he offered the following explanation:

> [B]y the way, the conversation I had with Judge Trent saying I reached out to him, well, actually, Judge Trent called me about advice on another case. He had a big insurance fraud case in his room and he called me. He was having a serious problem and asked me for my advice. Luckily, it worked out for both of us. The advice I gave him he was able to do what he wanted to do. And in the course of talking to Judge Trent, I said, I've got a case coming up. We're trying to get a jury. I think he's on your probation. Do you want me to handle it? I don't know what's

- 16 -

going to happen yet. He said, Sure. I give cases up all the time.

N.T., 5/31/2013, at 7. Thus, the transfer of the case from Judge Trent to Judge Wogan did not occur based upon some extraordinary circumstance, but rather by mere happenstance. Had Judge Trent never called Judge Wogan about some entirely different matter, the transfer of McNeal's case might never have happened. Random chance does not amount to an extraordinary circumstance. *Compare Commonwealth v. Williams*, 375 A.2d 155 (Pa. Super. 1977) (finding that transfer was warranted because original trial judge suffered a stroke, which constituted an extraordinary circumstance.).

Judge Wogan also asserted that judicial economy justified his assumption of control over McNeal's case. Undeniably, trial judges should strive for efficiency. But convenience does not equate with the extraordinary circumstances which Rule 700 requires. The rule commands that the judge who presides over the plea "shall" be the one who imposes the sentence, except where "extraordinary circumstances . . . preclude the judge's presence." We find no such circumstances in the record before us.

In his Rule 1925(a) opinion, Judge Wogan echoes the position that the Commonwealth takes herein; to wit, that nothing in the rules prohibits the action that he took in this case. For the preceding reasons, we reject this narrow interpretation of our rules. At all events, Judge Wogan offers a distinctly sparse explanation of his action according to the purpose of our

rules. Instead, Judge Wogan opts to justify his actions by taking aim at the public defender's office. For example, Judge Wogan claims that the reason he spoke to Judge Trent about the case was because the public defender's office routinely neglects to inform trial courts when probation violations occur. Apparently, Judge Wogan believes that it was his civic duty to inform Judge Trent that McNeal possibly had violated his probation. What other members of the public defender's office have done in other cases is of course irrelevant to McNeal. Moreover, Judge Wogan's claim is plainly incorrect in this instance. As counsel for McNeal pointed out to Judge Wogan on the record, Judge Trent already was aware of the alleged violation and had in fact scheduled a hearing on the violation for July 29, 2013. *See* N.T., 5/31/2013, at 7.

Judge Wogan claimed that similar transfers occur frequently, and further alleged that the public defender's office "only argues that transferring [violation of probation] cases is contrary to the Rules of Criminal Procedure when it believes it may impact their client negatively." T.C.O. at 6. This strikes us as a peculiar criticism indeed. Our Supreme Court promulgates rules. Lawyers invoke and rely upon those rules in representing their clients. Such advocacy of necessity may at times include arguments that a particular ruling or procedure violates an applicable rule. We fail to comprehend, and we do not approve, Judge Wogan's chastisement of lawyers' use of our rules in fulfilling their professional duty of zealous representation.

The fact that transfers frequently occur in Philadelphia, assuming that claim to be true, and the fact that the public defender's office does not object to those transfers in every instance, in no way precludes a present objection. What allegedly has become entrenched as common practice does not preclude another attorney from standing on the rules and pursuing a meritorious claim. More importantly, the putative commonality of a practice does not exempt a court from Rule 700's mandate. No extraordinary circumstance exists in this case, and no amount of finger-pointing by the trial court will prove otherwise.

For these reasons, McNeal is entitled to a new probation violation hearing. Nevertheless, for the reasons that follow, such hearing might not be necessary upon remand because we vacate the summary criminal mischief conviction upon which the probation violation relied. We turn our attention to McNeal's claims concerning that conviction.

McNeal first argues that the trial court erred by permitting the Commonwealth to reduce the grading of the criminal mischief charge from a misdemeanor to a summary offense. McNeal alleges that the Commonwealth elected to proceed with the charge as a summary offense at the suggestion of Judge Wogan. McNeal insinuates that the decision was a collaborative effort between the prosecutor and Judge Wogan to "circumvent the authority of the jury." Brief for McNeal (No. 1775 EDA 2013) at 24. McNeal further contends that, because he was charged initially with a misdemeanor, he was entitled to a jury trial on the charge as such. Finally,

McNeal argues that the bifurcation of the charges resulted in violations of the concepts of double jeopardy and collateral estoppel. *Id.* at 25. On this last point, we disagree with McNeal.

The criminal mischief charge at issue initially was filed as an ungraded misdemeanor. However, at the preliminary hearing in this case, the assistant district attorney requested, based upon the amount of damage ($960) asserted by the alleged victim during the hearing, that the charge be designated a third degree misdemeanor. N.T., 7/18/2011, at 9-10; *see* 18 Pa.C.S. § 3304(b) (grading criminal mischief if the damage caused by the actor is more than $500 but less than $1000). However, on April 12, 2013, the assistant district attorney told the trial court that she was "inclined to proceed on that as a summary." N.T., 4/12/2013, at 3. By April 15, 2013, the prosecutor had decided affirmatively to reduce the charge to a summary offense, a decision to which McNeal objected and which he steadfastly opposed. N.T., 4/15/2013, at 7-8. At sentencing, the assistant district attorney noted that she had acted at the direction of her supervisor. N.T., 5/31/2013, at 19.

McNeal maintains, both directly and by allusion, that the prosecutor elected to proceed with the charge as a summary offense to accommodate Judge Wogan, who, McNeal believes, wanted the charge to be a summary so that he could preside over that charge personally so as to ensure a

conviction that would in turn constitute a violation of McNeal's probation.[4] The record lends considerable support to McNeal's allegations regarding Judge Wogan's motives. Judge Wogan repeatedly questioned McNeal's intelligence, and at least twice emphasized prior to the verdict that a summary conviction would serve as a probation violation. Our close review of the record suggests that Judge Wogan had decided that McNeal was guilty of some crimes before the trial even started. Judge Wogan explained that one of McNeal's arguments would be moot if the jury "somehow" found him not guilty of the charged offenses. N.T., 4/18/2013, at 7. At sentencing, Judge Wogan told McNeal that he was "going to . . . give you every day I can give you today." N.T., 5/31/2013.

Regardless of what Judge Wogan's true motives were, we cannot impute those motives to the assistant district attorney in this case. "The prosecutor . . . has the duty to decide what charges should be brought against a particular offender and then to prosecute the offender according to that law. A prosecutor is vested with considerable discretion in deciding who will or will not be charged and what they will be charged with."

---

[4] Bifurcating a trial such that a jury will render a verdict on any misdemeanors or felonies while a trial judge rules on any summary offenses is permitted by our rules of criminal procedure. *See* Pa.R.Crim.P. 648(F) ("If there is a summary offense joined with the misdemeanor, felony, or murder charge that was tried by the jury, the trial judge shall not remand the summary offense to the issuing authority. The summary offense shall be disposed of in the court of common pleas[.]").

*Commonwealth v. Amundsen*, 611 A.2d 309, 311 (Pa. Super. 1992). The United States Supreme Court likewise has acknowledged that the prosecution enjoys considerable discretion in deciding what charges to bring against a defendant. *United States v. Batchelder*, 442 U.S. 114 (1979). "Selectivity in the enforcement of criminal law is, of course, subject to constitutional constraints. . . . [A] prosecutor may be influenced by the penalties available upon conviction; however, that fact[,] standing alone, does not give rise to a violation of the Equal Protection or Due Process Clauses." *Commonwealth v. Berryman*, 649 A.2d 961, 974 (Pa. Super. 1994). Further:

> [i]n reviewing a grant to amend an information, the Court will look to whether the appellant was fully apprised of the factual scenario which supports the charges against him. Where the crimes specified in the original information involved the same basic elements and arose out of the same factual situation as the crime added by the amendment, the appellant is deemed to have been placed on notice regarding his alleged criminal conduct and no prejudice to defendant results. *Commonwealth v. J.F.*, 800 A.2d 942, 945 (Pa. Super. 2002).

*Commonwealth v. Sinclair*, 897 A.2d 1218, 1222 (Pa. Super. 2006) (citation modified).

In light of these standards, and in view of the vast discretion afforded to prosecutors to decide which charges to file and pursue against a defendant, we can discern no abuse of prosecutorial discretion under these circumstances. There is no evidence of record that the prosecutor acted in collusion with Judge Wogan. Nor are we permitted to presume that the

prosecutor's actions were based only upon the belief that Judge Wogan would in fact convict McNeal and find him in violation of his probation. Simply put, we cannot impute Judge Wogan's improper behavior to the Commonwealth without some evidence in the record to show that the prosecutor harbored the same dubious motive. The record we have does not support such a finding. Thus, our concerns notwithstanding, we must reject McNeal's argument that the trial court erred in permitting the prosecutor to reduce the charge.

We also reject McNeal's argument that permitting the prosecutor to reduce the charge was a violation of the principles of double jeopardy or collateral estoppel. In *Commonwealth v. States*, 938 A.2d 1016 (Pa. 2007), the Pennsylvania Supreme Court explained the concepts of double jeopardy and collateral estoppel in the criminal context as follows:

> The proscription against twice placing an individual in jeopardy of life or limb is found in the Fifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794 (1969). The double jeopardy protections afforded by our state constitution are coextensive with those federal in origin; essentially, both prohibit successive prosecutions and multiple punishments for the same offense. *Commonwealth v. Fletcher*, 861 A.2d 898, 912 (Pa. 2004). We have described double jeopardy rights as "freedom from the harassment of successive trials and the prohibition against double punishment." *Commonwealth v. Hude*, 425 A.2d 313, 318 (Pa. 1980) (plurality). [C]ollateral estoppel (also known as issue preclusion), is most familiar in the civil context, where its stated purpose is to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and by preventing inconsistent decisions, [and] encourage reliance on adjudication." *Shaffer v. Smith*, 673 A.2d 872, 875 (Pa. 1996).

However, collateral estoppel does not operate in the criminal context in the same manner in which it operates in the civil context. For instance, in civil practice the doctrine is applicable, in equal measure, to both parties, whereas in the criminal context, the use of the doctrine is considerably restricted, particularly where the Commonwealth seeks to use it against a criminal defendant. *See Commonwealth v. Holder*, 805 A.2d 499 (Pa. 2002) (permitting the Commonwealth limited use of collateral estoppel principles to preclude relitigation of an evidentiary ruling that had been rendered in a previous probation hearing) (plurality). With respect to the criminal law defendant, collateral estoppel is treated as a subpart of double jeopardy protection and is defined as follows: "Collateral estoppel . . . does not automatically bar subsequent prosecutions[,] but does bar redetermination in a second prosecution of those issues necessarily determined between the parties in a first proceeding which has become a final judgment." *Commonwealth v. Smith*, 540 A.2d 246, 251 (Pa. 1988) (citation omitted). As simple as this definition appears, the principle's application is not as straightforward as it is in the civil context because it must be viewed through the lens of double jeopardy. *Commonwealth v. Brown*, 469 A.2d 1371, 1373 (Pa. 1983) (it is "double jeopardy that forbids the state from offending the collateral estoppel rule").

*States*, 938 A.2d at 1019-20 (citations modified).

These principles apply to "subsequent" prosecutions where the first trial ended with a definitive determination of a controlling material issue. *Id.* They do not apply to the typical scenario permitted by Pa.R.Crim.P. 648(F), where the jury and the trial court rendered conflicting credibility findings. A trial judge, sitting simultaneously as fact-finder with a jury in a bifurcated summary/non-summary trial, is entitled to make his or her own credibility findings, and it is well-settled that "inconsistent verdicts are permissible in Pennsylvania." *States*, 938 A.2d at 1025. What occurred in this case was an inconsistent verdict. Such verdicts, "while often perplexing,

are not considered mistakes and do not constitute a basis for reversal." **Commonwealth v. Petteway**, 847 A.2d 713, 718 (Pa. Super. 2004) (citations omitted).

We turn now to what is perhaps the most troubling aspect of this troubling case: Judge Wogan's unapologetic admission that he considered evidence *dehors* the record when deliberating upon and rendering a verdict on the criminal mischief charge. As noted earlier, Judge Wogan considered information from a letter that McNeal had sent to him, even though the Commonwealth never introduced that letter at trial. **See** N.T., 5/31/2013, at 15-18; T.C.O. at 11. This was plain error. Indeed, it was stark and fundamental error.

We are unaware of any basis for Judge Wogan's assertion that "there is no legal reason to exclude this court from considering the letter in making its summary [*sic*] judgment." T.C.O. at 11. It is hornbook law that "a court may not support an adjudication of guilt with evidence not part of the trial record." **Commonwealth v. Wasiuta**, 421 A.2d 710 (Pa. Super. 1980); **Commonwealth v. Martell**, 452 A.2d 873, 875 (Pa. Super. 1982); **see also Eck v. Eck**, 475 A.2d 825, 827 (Pa. Super. 1984) (noting that "a trial court may not consider facts or evidence *dehors* the record in making [any] determination."); **Ney v. Ney**, 917 A.2d 863, 866 (Pa. Super. 2007) (same).

Here, Judge Wogan freely admitted that he considered the contents of McNeal's letter, notwithstanding an apparent glimmer of recognition that it was improper for him to do so:

> Then you have another appellate issue, because yes, I did use the letter. I had additional information. We talked about the letter. I gave you a copy and the Commonwealth. If you don't like defendants writing me letters, then maybe your office should counsel them early on. But he said there was evidence of criminal trespass, and yes, I agree. That was an understatement.
>
> \* \* \*
>
> Well, maybe you have an appellate issue because I used the letter and that was information that the jury didn't have but I had. It's a tacit admission.

N.T., 5/31/2013, at 17-18. As he did in defending his unilateral actions in reaching out for McNeal's probation case, Judge Wogan again attempted to place the blame on the defense attorney. In this instance, Judge Wogan criticized defense counsel for failing to instruct clients not to send letters to the trial judge. It is apparent that Judge Wogan believed that he could flout the basic principles of fair trial because defense counsel never affirmatively told McNeal that it was a bad idea to send the judge a letter. Judge Wogan's blame-shifting is unavailing. It is clear that Judge Wogan had no interest in the propriety of considering the letter, and that he was going to consider it regardless of the commands of our laws. **See** T.C.O. at 11 (Judge Wogan states that he "is not about to ignore a letter voluntarily sent by [McNeal] to [the] court."). T.C.O. at 11.

Judge Wogan convicted McNeal of a crime with evidence that the Commonwealth never introduced at trial. This was patent error. The Commonwealth concedes candidly that McNeal is entitled to relief. **See** Brief

for the Commonwealth (No. 1775 EDA 2013), at 15-16. McNeal's summary criminal mischief conviction is vacated.

Having concluded that McNeal's conviction must be vacated, we also must vacate the judgment of sentence that was imposed for the probation violation. The criminal mischief conviction was the exclusive basis for the probation violation. Again, the Commonwealth candidly concedes that McNeal is entitled to this relief. *See* Brief for the Commonwealth (No. 1771 EDA 2013), at 14-15. Consequently, we vacate that judgment of sentence as well. Because we do so, we need not address McNeal's claim concerning the discretionary aspects of his sentence in case number 1771 EDA 2013, and that claim is now moot.

In his remaining two claims, McNeal raises identical due process arguments, in each of which he delineates the acts of impropriety committed by Judge Wogan. We need not delve into these issues in any substantive way. Judge Wogan's errors and transgressions are well documented in this case. We need proceed no further. We need not commence an additional discussion of whether Judge Wogan violated McNeal's rights to due process and fundamental fairness so as to require a new trial. The relief that McNeal requests based upon these asserted constitutional violations is vacatur of his judgments of sentence and a remand for new proceedings. For the reasons elaborated upon above, we already have granted that precise relief to McNeal. Thus, McNeal's last two claims are moot, and require no further discussion.

Judgments of sentence vacated. Case remanded.[5] Jurisdiction relinquished.

Judgment Entered.

*[signature]*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/16/2015

---

[5] By command of our Supreme Court, this Court is not permitted *sua sponte* to order a judge to recuse himself from a case. **See Commonwealth v. Whitmore**, 912 A.2d 827, 833-34 (Pa. 2006). We obviously will not do so. We nonetheless would be remiss if we did not express our concern for McNeal's ability to receive a fair and impartial trial if this case is tried anew before Judge Wogan, because Judge Wogan already has heard the evidence of record and has rendered a verdict based upon evidence *dehors* that evidentiary record. **See** Canon 2.9 of the Code of Judicial Conduct ("A judge shall not initiate, permit, or consider *ex parte* communications, or consider other communications made to the judge outside the presence of the parties or their lawyers, concerning a pending or impending matter.").