J-A18012-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| PNC BANK, N.A., SUCCESSOR BY MERGER TO NATIONAL CITY BANK | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| WAYNE P. BYZON AND PRISCILLA L. BYZON | : | No. 1584 WDA 2018 |
| | : | |
| Appellants | : | |

Appeal from the Order Entered October 4, 2018
In the Court of Common Pleas of Westmoreland County Civil Division at
No(s):  No. 376 of 2017

BEFORE:  BOWES, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.:                    **FILED SEPTEMBER 19, 2019**

Appellants Wayne P. Byzon and Priscilla L. Byzon (collectively, "Appellants") appeal from the October 4, 2018 order denying their petition to set aside sheriff's sale following Appellants' default on their mortgage with Appellee PNC Bank, N.A. ("PNC").  We affirm.

This case has its factual and procedural origins in financial instruments and agreements executed between Appellants and National City Bank, to which PNC is a successor by merger.  On June 16, 2000, Appellants executed an "Equity Reserve Agreement" with National City Bank, which granted Appellants a line of credit that permitted them to obtain advances up to a maximum of $70,000.  In exchange for this line of credit, Appellants executed an "Open-End Mortgage," which granted National City Bank an ongoing security interest in Appellants' real property located in Sewickley Township,

Westmoreland County, at 515 Highland Avenue, Herminie, Pennsylvania, 15637 (the "Property"). *See* Equity Reserve Agreement, 6/16/00, at 2 ("Your Line will be secured by a mortgage . . . on your dwelling . . . ."); *see also* Open-End Mortgage, 6/16/00, at 1 ("[I]t is expressly understood and agreed that this Mortgage secures, *inter alia*, certain loans and advances made by Lender to Borrower . . . ."). In relevant part, Appellants' credit line had a five-year draw period during which they could obtain advances before it was initially set to mature in June 2005 (the "Maturity Date"), with the potential to extend this date "for one or more additional 5 year period(s)." *See* Equity Reserve Agreement, 6/16/00, at 1. Under these agreements, Appellants were obligated to repay the principal and interest on any advances issued under the aforementioned line of credit in monthly installments. *Id*. at 1-2.

With respect to the interplay between the date of maturity and Appellants' payments, the credit line contains a "general acceleration clause"[1] which provides as follows:

> Until the Maturity Date, your payments will be due monthly. You may pay the entire unpaid balance of your Line . . . at any time. You are required to pay a minimum payment by the Due Date shown on your statement equal to the sum of the Line Minimum Payment . . . .

---

[1] As a general proposition, our Supreme Court has previously described a "general acceleration clause" as one that "provides for the lender's option to declare all of the sums secured by the mortgage to be immediately due and payable upon the borrower's breach of any covenant or agreement in the mortgage[,] *i.e.*, the failure to make monthly mortgage payments." *Marra v. Stocker*, 615 A.2d 326, 328 n.5 (Pa. 1992).

- 2 -

. . . .

> The Line Minimum Payment will not fully repay the principal that is outstanding on your Line by the Maturity Date. . . . [PNC] will refinance the remaining unpaid balance of your Line . . . on terms then offered by [PNC], provided you continue to meet [PNC's] standards for credit worthiness and collateral value. Otherwise, you will be required to pay the entire balance in a single payment. After the Maturity Date and prior to refinancing or payment of the entire outstanding balance, you will continue to be bound by this Agreement in that you will be . . . required to continue making monthly payments. [PNC] does not waive its right to receive payment in full by accepting partial payments after the Maturity Date.

> . . . .

> [PNC] may delay exercising any of its rights under this Agreement without losing them.

*Id*. at 2-3. Thus, the monthly installment plan continues through the Maturity Date, unless PNC seeks full payment or determines that Appellants no longer meet its standards of creditworthiness. *Id.* The mortgage similarly provides that Appellants "shall be in default under this Mortgage upon a default under the terms" of the credit line. *See* Open-End Mortgage, 6/16/00, at 1. The mortgage also contains an acceleration clause, stating that "[u]pon default, to the extent permitted by law, after any notices required by law, [PNC] may at its option declare due and payable the unpaid balance of all sums secured by this Mortgage and may take any action allowed by law . . . ." *Id*.

The record before us is silent regarding what notable events (if any) transpired for approximately fifteen years after the execution of these agreements. However, neither Appellants nor PNC dispute that Appellants

defaulted on their monthly payments under the aforementioned agreements beginning at some point in August 2015. *See* Appellant's brief at 7; *see also* PNC's brief at 4. This default apparently continued, unabated, until May 2016. *Id*. On May 24, 2016, PNC sent via certified mail Appellants a notice of PNC's intent to foreclose on the Property. *See* Foreclosure Notice, 5/24/16, at 1-3. This notice advised Appellants that they were in default and that because the relevant Maturity Date had passed, PNC was exercising its right to demand full repayment of the outstanding balance secured by the mortgage in the amount of $59,933.58. *Id*. at 4-5. The notice also advised Appellants that if full payment was not tendered, PNC would pursue foreclosure and a sheriff's sale of the Property.

Based on the record before us, it appears that Appellants took no action in response to this foreclosure notification. On January 23, 2017, PNC filed a complaint in mortgage foreclosure in the Court of Common Pleas of Westmoreland County. In relevant part, the complaint alleged that Appellants had defaulted on the mortgage, and sought an *in rem* judgment in the amount of $61,077.58 (which included interest on the unpaid principal due as of December 12, 2016). *See* Foreclosure Complaint, 1/23/17, at 1-2. PNC reinstated the complaint on April 3, 2017, and July 31, 2017, respectively. On August 22, 2017, a deputy of the Sheriff of Westmoreland County personally served Appellants with a copy of the complaint at the Property. *See* Proof of Service, 8/22/17, at 1. Again, it appears that Appellants took no action in response to the filing of this complaint, despite the "Notice to Defend"

- 4 -

attached to PNC's complaint. *Cf.* Pa.R.Civ.P. 1026(a) ("[E]very pleading subsequent to the complaint shall be filed within twenty days after service of the preceding pleading, . . . .").

On September 12, 2017, PNC sent Appellants notice of its intention to seek a default judgment pursuant to Pa.R.C.P. 237.1(a)(2)(ii), and advised Appellants that they had ten days to take action. Appellants did not file a responsive pleading, or take any other action. On October 6, 2017, PNC filed a praecipe for default judgment in mortgage foreclosure, requesting the entry of a judgment in the amount of $63,132.58, which included interest on the unpaid principal and late fees due as of September 29, 2017. On December 14, 2017, PNC filed a writ of execution in the mortgage foreclosure action. On March 12, 2018, PNC filed a verification of service confirming that Appellants were served via certified mail on February 12, 2018 and actually received a notice of sheriff's sale of real estate on the same day. The Sheriff of Westmoreland County posted a notice of sheriff's sale of real estate on the front door of the Property. On May 7, 2018, PNC purchased the Property at the sheriff's sale for costs and taxes totaling $5,664.04.

On June 1, 2018, Appellants filed a timely petition to set aside sheriff's sale, arguing that the sale was invalid because: (1) the foreclosure notice sent by PNC pursuant to Pennsylvania law was "defective because it does not state a monthly payment amount;" and (2) that PNC's acceleration of the entire

amount due under the mortgage was invalid.[2] *See* Petition to Set Aside Sheriff's Sale, 6/1/18, at ¶¶ 9(a)-(d). On June 29, 2018, PNC filed a response in opposition. The trial court heard oral arguments regarding Appellants' petition, and on October 4, 2018, the trial court filed an order denying Appellants' petition and concluding that PNC "sent the appropriate notices to [Appellants] at all times during these proceedings, . . . ." Order, 10/4/18, at 2. Appellants filed a timely notice of appeal to this Court and complied with the trial court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The court filed an order pursuant to Pa.R.A.P. 1925(a) stating that the reasons for its ruling were adequately set forth in the October 4, 2018 order denying Appellants petition.

In their briefing, Appellants have characterized their appeal as raising two separate claims: (1) whether the foreclosure notice issued by PNC in this case was adequate under 35 P.S. §§ 1680.402c, 1680.403c, and 41 P.S. § 403; and (2) whether the trial court erred in not voiding the foreclosure as a

---

[2] In their briefing before this Court, Appellants have apparently abandoned any separate claim that the acceleration of the mortgage was invalid under Pennsylvania law. While the acceleration of the mortgage is discussed in passing in the brief, it is purely as a demonstration of the inadequacy of the foreclosure notice. To the extent that Appellants intend to press this issue as a separate claim for relief, the claim has been waived. *See Commonwealth v. Rodgers*, 605 A.2d 1228, 1239 (Pa.Super. 1992) ("We must deem an issue abandoned where it has been identified on appeal but not properly developed in the appellant's brief.").

result of these notice deficiencies under 35 P.S. § 1681.5.[3]  **See** Appellants'

brief at 9-11.

Before addressing the merits of these claims, we must assess whether

they have been properly preserved for our review.  Specifically, PNC claims

that Appellants waived these issues under various theories, including: (1)

failure to raise these issues in the trial court pursuant to Pa.R.A.P. 302; (2)

failure to include these issues in Appellants' Rule 1925(b) concise statement;

and (3) failure to include a transcript pursuant to Pa.R.A.P. 1911 of the oral

arguments presented to the trial court on October 3, 2018.  **See** PNC's brief

at 9-12.

The certified record belies PNC's contentions.  Appellants raised several

issues in their petition to set aside sheriff's sale, arguing that PNC's notice was

"defective because it does not state a monthly payment amount" and because

PNC undertook "an acceleration of the entire mortgage amount" in alleged

violation of Pennsylvania law.  **See** Appellants' Petition to Set Aside, 5/28/18,

at ¶¶ 9(a)-(d).  Appellants' Rule 1925(b) concise statement alleged similar

---

[3] Appellants' two and one-half pages of argument are lacking in substance and bereft of cogent discussion regarding the relevant principles of law that underlay their claims.  There are no citations to Pennsylvania case law, and they cite a solitary statute in support of their arguments.  We remind Appellants that "[i]t is not for this Court to develop an appellant's arguments," but "[r]ather, it is the appellant's obligation to present developed arguments and, in so doing, apply the relevant law to the facts of the case, persuade us there were errors, and convince us relief is due because of those errors."  **See Commonwealth v. Rush**, 959 A.2d 945, 950-51 (Pa.Super. 2008).  While Appellants' arguments are not quite spare enough to invite waiver, Appellants' threadbare brief treads very close to that precipitous line.

- 7 -

deficiencies in the foreclosure notice provided by PNC, and asserted that the trial court erred in not voiding the foreclosure as a result of the claimed oversights. *See* Appellants' Rule 1925(b) Statement, 12/4/18, at ¶¶ 1-5. As these claims clearly identify the alleged shortcomings in PNC's notices, and are largely identical to the substantive arguments advanced in the petition and appellate brief, waiver is inappropriate. *See Mazurek v. Russell*, 96 A.3d 372, 377 (Pa.Super. 2014) (holding waiver under Rule 1925(b) is inappropriate where the concise statement is "sufficiently specific" to allow us to "readily distinguish" the "asserted errors"); *Commonwealth v. McNeal*, 120 A.3d 313, 322 n.3 (Pa.Super. 2015) (issues preserved when presented in a motion such that the trial court had "ample opportunity to consider . . . and to rule on the objection").

Finally, as it relates to the missing transcript of the October 3, 2018 oral argument, we note that waiver under Rule 1911 is only permissible where the failure to include transcripts is tantamount to a failure to ensure that "the original record certified for appeal contains sufficient information to conduct a proper review." *Smith v. Smith*, 637 A.2d 622, 623-24 (Pa.Super. 1993). Instantly, there is no prejudice to our ability to review the issues as presented because Appellants do not reference the precise arguments presented to the trial court on that date. *See* Appellant's brief at 4-11. Thus, we decline to waive Appellants' appeal under Rule 1911. *See Commonwealth v. Houck*, 102 A.3d 443, 456 (Pa.Super. 2014) (waiver under Rule 1911 only appropriate where issues "cannot be resolved in the absence of the necessary transcript").

Our standard of review is well-established under Pennsylvania law: "A petition to set aside a sheriff's sale is grounded in equitable principles and is addressed to the sound discretion of the hearing court." **Kaib v. Smith**, 684 A.2d 630, 631 (Pa.Super. 1996). Here, Appellants bear "[t]he burden of proving circumstances warranting the exercise of the court's equitable powers" and "the application to set aside a sheriff's sale may be refused because of the insufficiency of proof to support the material allegations of the application." **Bornman v. Gordon**, 527 A.2d 109, 111 (Pa.Super. 1987). With particular reference to the instant case, "[t]he burden of showing inadequate notice resulting in prejudice is upon the person who seeks to set aside the sale." **Greater Pittsburgh Business Dev. Corp. v. Braunstein**, 568 A.2d 1261, 1265 (Pa.Super. 1989). Overall, we will not reverse the trial court's decision absent a clear abuse of discretion or error of law. **See First Fed. Sav. Bank of Delaware v. CPM Energy Systems Corp.**, 619 A.2d 371, 373 (Pa.Super. 1993).

Appellants purport to challenge the adequacy of the initial notice of intent to foreclose that PNC sent to Appellants on May 24, 2016. In relevant part, such notices are governed by 41 P.S. § 403, which provides as follows:

(a) Before any residential mortgage lender may accelerate the maturity of any residential mortgage obligation, commence any legal action including mortgage foreclosure to recover such obligation, or take possess of any security of the residential mortgage debtor for such residential mortgage obligation, such person shall give the residential mortgage debtor notice of such intention at least thirty days in advance as provided in this section.

(b) Notice of intention to take action as specified in subsection (a) of this section shall be in writing, sent to the residential mortgage debtor by registered or certified mail at his last known address and, if different, at the residence which is the subject of the residential mortgage.

(c) The written notice shall clearly and conspicuously state:

   (1) The particular obligation or real estate security interest;

   (2) The nature of the default claimed;

   (3) The right of the debtor to cure the default as provided in section 404 of this act and exactly what performance including what sum of money, if any, must be tendered to cure the default;

   (4) The time within which the debtor must cure the default;

   (5) The method or methods by which the debtor's ownership or possession of the real estate may be terminated; and

   (6) The right of the debtor, if any, to transfer the real estate to another person subject to the security interest or to refinance the obligation and of the transferee's right, if any, to cure the default.

41 P.S. § 403. In addition to these requirements, 35 P.S. §§ 1680.402c and 1680.403c require that such notices include a recitation of the recipient's rights under HEMAP.

Overall, Appellants' discussion fails to adequately capture the nature of the alleged errors in PNC's notice on the basis of these requirements. While Appellants complain that the notice "did not state a payment amount," they simultaneously concede that the notice, in fact, referenced a total amount due of $59,933.00 under the terms of the mortgage and credit line agreements. Appellants similarly claim that the notice is deficient because it does not list a

monthly payment amount, but ignores the fact that PNC was exercising its right to demand full payment as a result of Appellants' unchallenged default under the terms of the mortgage and credit line agreements. Appellants' bald assertion that PNC's notice was "conflicting and inadequate" ignores that PNC's notice: (1) identified both the Property and PNC's security interest; (2) stated that Appellants were in default for failing to make monthly loan payments between August 1, 2015 and May 1, 2016; (3) apprised Appellants of the actions necessary to cure the default (*i.e.*, payment of the full amount due under the account); (4) provided a clear time frame in which default might be cured; (5) specified that Appellants' property would be sold by way of a sheriff's sale; and (6) informed Appellants that they were not permitted to transfer the property to a third-party. ***See Accord*** 41 P.S. §§ 403(c)(1)-(6). The notice also included an exhaustive recitation of Appellants' rights under HEMAP. ***See Accord*** 35 P.S. §§ 1680.402c, 1680.403c. Stated plainly, we do not discern the error(s) Appellants assert.

Even assuming, *arguendo*, that Appellants had identified a recognizable error in PNC's notice, we would still be unable to grant them relief. In relevant part, 35 P.S. §§ 1681.5(1) empowers a court to take action with respect to noncompliance with the above-discussed notice requirements, including: (1) dismissal of the underlying foreclosure action; (2) ordering corrected service; (3) imposing a stay; and/or (4) any "other appropriate remedies." Critically, though, the trial court may only take such actions "**to address the interests, if any, of the mortgagor who has been prejudiced thereby.**" *Id.*

(emphasis added). Instantly, Appellants have neglected to address any argument concerning how these alleged errors have prejudiced their rights. Prejudice in this precise context is **not** presumed under Pennsylvania law. *See Wells Fargo Bank, N.A. ex rel. Certificate Holders of Asset Backed Pass-Through Certificates Series 2004-MCWI*, 966 A.2d 1140, 1143-44 (Pa.Super. 2009).

We find the holding in *Wells Fargo* to be particularly instructive, as it addresses an analogous situation where this Court rejected a petitioner's opposition to foreclosure upon the grounds of noncompliance with the notice requirements under HEMAP. In *Wells Fargo*, an actual error in the notice provided to the petitioners was identified, *i.e.* failure to adequately identify the mortgagee, but the petitioners were unable to demonstrate that they were prejudiced by the improper notice via factual or legal arguments. Therefore, the trial court rejected their petition. This Court affirmed, concluding that the appellants "have provided no legal authority for their position, nor do they suggest what rights they were due above and beyond those that were afforded to them." *Id.* at 1143.

The case at bar is largely in parity with this holding, except that Appellants have failed to demonstrate a potentially actionable error in the notice. Like the petitioners in *Wells Fargo*, Appellants have "fail[ed] to suggest what rights they were not afforded under the circumstances, *i.e.*, they do not assert what prejudice they may have suffered." *Id.* at 1144. As such, their claims are without merit. Based on our review of the certified record and

Appellants' arguments, we find no error of law or abuse of discretion in the trial court's holding.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/19/2019