2018 PA Super 390

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EMMANUEL THEODORE BANKS | : | |
| | : | |
| Appellant | : | No. 1451 MDA 2017 |

Appeal from the Judgment of Sentence Entered December 15, 2016
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0000621-2014,
CP-67-CR-0001283-2015, CP-67-CR-0001472-2015,
CP-67-CR-0001501-2015, CP-67-CR-0001503-2015,
CP-67-CR-0003290-2015

BEFORE:   BOWES, J., McLAUGHLIN, J., and STRASSBURGER*, J.

OPINION BY McLAUGHLIN, J.:                    **FILED OCTOBER 29, 2018**

Emmanuel Theodore Banks appeals from the judgment of sentence of 18 to 42 months, imposed on December 15, 2016, following revocation of his intermediate punishment.  Banks challenges the authority of a visiting judge to revoke his original sentence, as well as discretionary aspects of the new sentence imposed.  We affirm.

In June 2015, Banks pleaded guilty before the Honorable Thomas H. Kelley to certain charges filed against him at each of the above-listed dockets.[1]

---

\*   Retired Senior Judge assigned to the Superior Court.

[1] Banks pleaded guilty to the following:

   (1)   Dkt. No. 621-2014 - Theft by Unlawful Taking, 18 Pa.C.S. § 3921(a)
         (graded as an M2);

*See* Notes of Testimony (N.T. Plea), 06/30/2015. The underlying facts supporting each of those pleas were not addressed by the revocation court, nor is their substance relevant to the issues currently before this Court. Therefore, we need not discuss them in detail. *See* N.T. Plea at 6-9 (outlining the factual basis for Banks' crimes).

Following a presentence investigation, this matter proceeded to sentencing in October 2015. *See* Notes of Testimony (N.T. Sentencing), 10/01/2015. The court imposed concurrent sentences for all charges, comprised largely of time-served sentences, probation, costs and fines. *Id.* at 5-7. At three dockets, Nos. 1472-2015, 1503-2015, and 3290-2015, the court imposed county intermediate punishment (IP) of five years, with the first twelve months to be served in the Day Reporting Center (DRC). *Id.* at 6. Following imposition of sentence, for reasons that are not clear from the record, this matter was re-assigned to the Honorable Michael E. Bortner. *See, e.g.*, Dkt. No. CP-67-CR-0001472-2015, Filings Information, Registry Entry, 10/22/2015.

---

(2) Dkt. No. 1283-2015 – Resisting Arrest, 18 Pa.C.S. § 5104; Accidents Involving Damage, 75 Pa.C.S. § 3743(a); Driving under Suspension, 75 Pa.C.S. § 1543(a).
(3) Dkt. No. 1472-2015 – two counts of Possession with Intent to Deliver (PWID), 35 P.S. § 780-113(a)(30);
(4) Dkt. No. 1501-2015 – Defiant Trespass, 18 Pa.C.S. § 3503(b)(1)(i);
(5) Dkt. No. 1503-2015 – Theft by Unlawful Taking, 18 Pa.C.S. § 3921(a) (graded as an M1);
(6) Dkt. No. 3290-2015 – PWID, 35 P.S. § 780-113(a)(30).

In June 2016, the York County Probation Department filed a petition for violation at each of Banks' six dockets. *See* Pet. for Violation, 06/17/2018. In support of the petition, the department cited new criminal charges and numerous technical violations. *Id.* at 4-5. According to the department, the charges arose from a domestic dispute involving Banks' paramour and included allegations of assault and theft.[2] *Id.* at 5. The technical violations included numerous allegations of failure to report to the DRC, failure to report for urine screenings, and/or production of a urine sample that tested positive for marijuana or alcohol. *Id.* at 4-5.

A warrant issued, and Banks was detained. In October 2016, he was released on supervised bail, and a hearing was scheduled for December 2016. *See* Revocation Ct. Order, 10/20/2016. The stated purpose of the hearing was two-fold: (1) a preliminary hearing to address Banks' new charges, apparently necessary because the complaining witness was no longer cooperating with the Commonwealth; and (2) an IP violation hearing. *Id.*

_____

[2] In its opinion, the revocation court stated that Banks was charged thereafter, by Informations dated September 2, 2016, as follows:

    (1)    Dkt. No. 5301-2016 – Simple Assault, 18 Pa.C.S. § 2701(a)(1);
    (2)    Dkt. No. 5303-2016 - Kidnapping, 18 Pa.C.S. § 2901(a)(3); Burglary, 18 Pa.C.S. § 3502(a)(1); Simple Assault, 18 Pa.C.S. § 2701(a)(3); Terroristic Threats, 18 Pa.C.S. § 2706(a)(1); and Unlawful Restraint, 18 Pa.C.S. § 2902(a)(1).

Revocation Ct. Pa.R.A.P. 1925(a) Op., 02/28/2018, at 2.

Sometime after this order issued, Judge Bortner left the bench on a medical convalescence. *See* Revocation Ct. Pa.R.A.P. 1925(a) Op. at 2.

At this point, the procedural history of this case becomes complicated. During Judge Bortner's absence, in December 2016, the scheduled hearing commenced before the Honorable Linda K. M. Ludgate. Notes of Testimony (N.T. Revocation), 12/15/2016.[3] At the request of the Commonwealth, the court entered an order to *nolle pros* the charges related to Banks' paramour. *Id.* at 2. The parties proceeded to address Banks' alleged IP violations. *Id.* At this point, the following exchange occurred:

> THE COURT: Okay. Is your client prepared to proceed today[,] because otherwise why wouldn't he proceed?
>
> [BANKS' COUNSEL]: Yeah, we can proceed. That's fine.

N.T. Revocation at 3.

Counsel conceded technical violations of his IP sentence but voiced concern that the *nolle prossed* charges formed the primary basis for the revocation hearing. *Id.* Though initially the court indicated that the substance of the new charges were no longer relevant, upon further consideration, the court agreed to consider the evidence. *Id.* at 3-4.

---

[3] Judge Ludgate served as a visiting, senior judge from Berks County, Pennsylvania. *See* N.T. Revocation at 1; Notes of Testimony (N.T. Post Sentence Hearing), 03/28/2017, at 16; Revocation Ct. Pa.R.A.P. 1925(a) Op. at 2; PCRA Ct. Order, 06/30/2017, at 2. As will become clear, this hearing represents Judge Ludgate's sole involvement with this case.

The probation officer first detailed the technical violations committed by Banks.[4]  *Id.* at 4-6 (detailing the dates on which Banks failed to report to the DRC, failed to provide urine samples or provided diluted samples, and produced samples testing positive for marijuana or alcohol).  Thereafter, the probation officer again referenced Banks' arrest and provided details of Banks' alleged behavior:

> PROBATION OFFICER: Well, condition 10 [of the terms of Banks' intermediate punishment], assaultive and threatening behavior. Again, those are related to those cases.  That incident, there was a police report.  Probation was contacted, as you see, Your Honor, May 28th –
>
> THE COURT: He punched her in the head.  Is this a domestic thing?
>
> PROBATION OFFCIER: It appears to be so, Your Honor.  It's his paramour.  She –
>
> THE COURT: It was a second time he's alleged to have broken into her house?
>
> PROBATION OFFICER: I believe so, Your Honor, according to this report, and according to what we have on record from the police as well.
>
> THE COURT: It looks like, according to this third paragraph under 10, that this was a place that was in her name?
>
> PROBATION OFFICER: It seems so, Your Honor.
>
> THE COURT: And then he got arrested on domestic violence?
>
> PROBATION OFFICER: Yes.  He was detained and officers from York City Police Department did also submit a report as well.

---

[4] The parties seemingly agreed to proceed with an informal hearing.  *See id.* at 3.  Though Banks was sworn in, the probation officer was not.  *Id.* at 3-4. Banks does not challenge the informal nature of the proceedings.

> We were able to make entry, the probation department, into [the alleged victim's] house. In paragraph 2, also, [Banks] took [the victim] at knife point to Red Lion and returned sometime –

*Id.* at 6-7. At this point, counsel for Banks objected:

> [COUNSEL]: Your Honor, I'm going to formally object to this. Those charges were *nolle prossed*. I don't think it's proper[ly] before you.

*Id.* at 7. The court did not rule on Banks' objection but ceased questioning the probation officer regarding the allegations and sought a recommendation for sentencing. *Id.* The probation officer then recommended 21 to 42 months of incarceration. *Id.*

In response, Banks attempted to explain why he had passed diluted and/or positive urine and informed the court that he was employed and took weekly classes at a church. No further evidence was offered to counter the statements of the probation officer. *Id.* at 12.

Thereafter, the court concluded that Banks had violated the terms of his IP sentence imposed at three dockets, Nos. 1472-2015, 1503-2015, and 3290-2015. The court revoked those IP sentences and imposed an aggregate sentence of 18 to 42 months of incarceration. *Id.* at 14.[5]

---

[5] To be clear, no action was taken at docket Nos. 621-2014, 1501-2015, or 1283-2016.

Banks timely filed a post-sentence motion.[6] Banks' Post-Sentence Motion, 12/16/2016. Banks noted that Judge Ludgate was not the original sentencing judge and asserted that neither he nor his counsel consented to Judge Ludgate presiding over the violation hearing. *Id.* at 1-2 (unpaginated). Further, according to Banks, no extraordinary circumstances justified a different judge's supervision of his case. *Id.* at 2 (unpaginated) (further averring that Judge Bornter's absence was temporary and that he was due to return to the bench in January 2017). Banks also asserted that the sentence imposed was excessive and noted that the new charges filed against him were *nolle prossed*. *Id.* at 2-3 (unpaginated). Accordingly, Banks requested that his sentence be vacated and a new violation hearing held before Judge Bortner. *Id.*

The court took no action to resolve Banks' motion until February 2017, when it issued an order scheduling a hearing. Revocation Ct. Order, 02/14/2017. In March 2017, a hearing was held before Judge Bortner. *See* N.T. Post-Sentence Hearing at 1. Following argument, it became clear that Banks sought resentencing, asserting that Judge Ludgate had impermissibly focused on the *nolle prossed* charges. *Id.* at 3-6. Following further discussions, Judge Bortner declined to rule on Banks' motion, concluding that

---

[6] A motion to modify a sentence imposed after a revocation proceeding does "not toll the 30-day appeal period." Pa.R.Crim.P. 708(E). Here, Banks did not file an appeal from the judgment of sentence within 30 days. However, his appeal is nonetheless timely because, as discussed below, the court reinstated Banks' appellate rights.

it should be resolved by Judge Ludgate. *Id.* at 14. In light of the unusual circumstances, the court permitted Banks to request formally an extension of time within which to file an amended motion. *Id.* at 14-16 (suggesting that Banks alert court administration to the time constraints of Pa.R.Crim.P. 720). Two weeks later, in April 2017, without express leave to do so, Banks filed an amended post-sentence motion, which reiterated his assertion that the sentence imposed was excessive in light of the *nolle prossed* charges and noted that the Commonwealth and the court agreed that the sentencing issue should be heard by Judge Ludgate. Banks' Amended Post-Sentence Motion, 04/12/2017.

The court took no further action to resolve Banks' post-sentence motion or the amended motion. In May 2017, Banks *pro se* filed a petition for collateral relief under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546, asserting *inter alia* that he was sentenced based upon charges *nolle prossed*. Banks' PCRA Petition, 05/09/2018, at 3.

In response, the court issued an order scheduling a hearing to resolve the post-sentence motion, the amended motion, as well as the PCRA petition. In so doing, the court specifically acknowledged that Banks' initial post-sentence motion should have been denied as a matter of law but that no notice of the denial was entered on the docket or forwarded to Banks. *See* PCRA Ct. Order, at 1-2 (citing Pa.R.Crim.P. 720(B)(3)). Moreover, the court again recognized the unusual circumstances of this case, in particular Judge Ludgate's temporary stewardship and unavailability. *Id.* at 2. In order to

resolve the outstanding issues, Judge Bortner reassumed control of this case. *Id.* at 2 (citing in support ***Commonwealth v. Lambert***, 765 A.2d 306 (Pa.Super. 2000) (suggesting that new judge may preside over "post-conviction" proceedings in "the interests of justice")).

In August 2017, following a hearing, the court granted Banks' PCRA petition and reinstated his appellate rights. PCRA Ct. Order, 08/22/2017. In addition, the court noted that Banks' amended post-sentence motion was denied by operation of law but granted him immediate, supervised bail. ***Id.***

Banks timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) statement challenging Judge Ludgate's authority to preside over the violation hearing and discretionary aspects of the sentence imposed. ***See*** Banks' Pa.R.A.P. 1925(b) Statement. The court filed a responsive opinion.[7]

Banks raises the following issues on appeal:

[1.] The [revocation] court erred in denying [Banks'] motion to vacate his sentence and order [a] new sentencing hearing so [he] could be resentenced before the original sentencing judge.

[2.] The [revocation] court abused its discretion when it imposed an excessive sentence on [Banks] by considering charges and their underlying facts[,] which had been nol[le] prossed by the Commonwealth.

Banks' Br. at 4.

_____

[7] To be clear, following reinstatement of his appellate rights, Banks appealed from the judgment of sentence imposed by the revocation court. In response, Judge Bortner authored an opinion on behalf of the revocation court. ***See*** Revocation Ct. Pa.R.A.P. 1925(a) Op. at 13.

Banks challenges the revocation of his county IP sentence and the facts relied upon in fashioning a new sentence.

> Our Court has held that the revocation of a county intermediate punishment sentence is equivalent to the revocation of probation[.] An intermediate punishment sentence imposed pursuant to 42 Pa.C.S. § 9763 … may be revoked where the specific conditions of the sentence have been violated. "Upon revocation, the sentencing alternatives available to the court shall be the same as the alternatives available at the time of initial sentencing." 42 Pa.C.S. § 9773[.] This rule of resentencing is analogous to that set forth for resentencing following revocation of probation. … Moreover, revocation of probation occurs, as does revocation of an intermediate punishment sentence, where it has been found the defendant has violated the terms of his sentence.

*Commonwealth v. Melius*, 100 A.3d 682, 685-86 (Pa.Super. 2014) (formatting modified; some internal citations removed).

Revocation of a county IP sentence is governed by 42 Pa.C.S. § 9773, which provides in relevant part:

> Revocation. -- The court may revoke a sentence of county intermediate punishment upon proof of a violation of specific conditions of the sentence. Upon revocation and subject to section 9763(d), the sentencing alternatives available to the court shall be the same as the alternatives available at the time of initial sentencing.

42 Pa.C.S. § 9773(b). In an appeal, we may review the validity of the revocation proceedings, as well as the legality and discretionary aspects of any new sentence imposed. *Commonwealth v. Cartrette*, 83 A.3d 1030, 1033-34 (Pa.Super. 2013) (*en banc*).

In his first issue, Banks contends the revocation court erred in denying his post-sentence motion to vacate his sentence and conduct a new hearing

before "the original sentencing judge." Bank's Br. at 15. Essentially, Banks challenges the authority of Judge Ludgate, a visiting judge with no prior involvement in his case, to preside over his violation hearing. *See id.* at 12. According to Banks, absent extraordinary circumstances not present here, Judge Bortner was the appropriate judge to preside. *See id.* at 15-16 (citing in support *Commonwealth v. McNeal*, 120 A.3d 313 (Pa.Super. 2015)); Pa.R.Crim.P. 700). Proceeding from this premise, Banks further argues that Judge Bortner erred when he invoked the coordinate jurisdiction rule[8] and declined to rule on Banks' post sentence motion. *Id.* at 15. According to Banks, Judge Ludgate's consideration of allegations underlying the *nolle prossed* charges constituted a manifest injustice, *i.e.*, an exception to the coordinate jurisdiction rule. *Id.* at 18. Thus, Banks concludes, he is entitled to a new violation hearing. *Id.* at 22.

Initially, we observe that Judge Bortner was not, in fact, the original sentencing judge in this case. The certified record reveals that Judge Kelley accepted Banks' guilty plea, reviewed a presentence investigation, and imposed sentence. *See* N.T. Plea; N.T. Sentencing. Judge Bortner was assigned supervision of Banks' case sometime thereafter. *See, e.g.*, Dkt No. CP-67-CR-0001472-2015, Filings Information, Registry Entry, 10/22/2015. We decline to reject Banks' arguments on this ground, however, as it is clear

---

[8] "[T]he coordinate jurisdiction rule commands that upon transfer of a matter between trial judges of coordinate jurisdiction, a transferee trial judge may not alter resolution of a legal question previously decided by a transferor trial judge." *Zane v. Friends Hosp.*, 836 A.2d 25, 29 (Pa. 2003).

that Judge Bortner was the regularly assigned judge since October 2015, and apart from his brief medical absence, has had significant involvement with this case.

In **McNeal**, this Court vacated the judgment of sentence imposed where a judge, assigned to adjudicate new charges incurred by a probationer, also assumed jurisdiction over the probation matter. **McNeal**, 120 A.3d at 322-25. In so doing, we relied upon Pennsylvania Rule of Criminal Procedure 700, which mandates that "the judge who presided at the trial or who received the plea of guilty or *nolo contendere* shall impose sentence unless there are extraordinary circumstances which preclude the judge's presence." Pa.R.Crim.P. 700; **see McNeal**, 120 A.3d at 323. Recognizing the "obvious value" in a sentencing judge's familiarity with a defendant's character and the nature of his crimes, we reasoned as follows:

> It is axiomatic that the judge who presides over the trial, or who accepts a guilty plea based upon a recitation of the facts underlying the pleaded-to crime, is the judicial officer best equipped to assess the nature of the defendant and the crime itself before imposing sentence.
>
> Rule 700 does not state that its terms apply to sentencing following a probation revocation. However, our General Assembly has instructed that, upon a probation revocation, "the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing." 42 Pa.C.S. § 9771(b). In other words, in practical effect, a judge imposing sentence after finding that a defendant has violated probation is no different from a judge imposing sentence in the first instance. For this precise reason, we discern no principled difference between a judge imposing an original sentence and one imposing a probation violation sentence, and certainly no difference meaningful enough to exempt the latter from the dictates of Rule 700.

***McNeal***, 120 A.3d at 323.  Thus, we concluded that Rule 700 applies in the revocation context.  ***Id.***

In ***McNeal***, we had no opportunity to examine what may constitute extraordinary circumstances.  ***Id.*** (observing no "extraordinary or even pedestrian" circumstances); ***but see Commonwealth v. Williams***, 375 A.2d 155, 157-58 (Pa.Super. 1977) (recognizing that stroke, "which disabled [the initial jurist] for some time, and which thereafter precluded his involvement in the rigorous duties inherent in the criminal court, certainly constituted 'extraordinary circumstances' within the meaning of the Rule").  Nevertheless, we specifically rejected judicial economy as sufficient justification.  ***McNeal***, 102 A.3d at 324 (concluding that convenience and efficiency do not equate with extraordinary circumstances required by rule).

Here, Banks suggests that Judge Bortner's medical absence fails to demonstrate extraordinary circumstances.  Banks' Br. at 16.  In support of this suggestion, he notes that Judge Bortner was readily available three months later, *i.e.*, in March 2017, when he presided over a hearing on Banks' post-sentence motion.  ***Id.***; ***see also*** N.T. Post Sentence Hearing at 1. Moreover, we observe that Judge Bortner signed the order scheduling this hearing in February 2017, one month earlier.  ***See*** Revocation Ct. Order, 02/14/2017.

In his opinion filed on behalf of the revocation court, Judge Bortner contends that it was proper for Judge Ludgate to assume control over Banks' revocation proceedings, as he was recuperating from surgery.  Revocation Ct.

Pa.R.A.P. 1925(a) Op. at 6 (citing in support **McNeal**, 120 A.3d at 323). Judge Bortner provides no further details describing his absence; thus, it is not clear, for example, whether his absence was planned in advance, whether his surgery was elective or the result of an emergency, the seriousness of his illness or injury, or whether his absence was intended to be short- or long-term. In similarly circumspect language, the Commonwealth merely echoes the court's contention, suggesting that "surgery and resulting recuperation" necessitated Judge Ludgate's assignment. Commonwealth's Br. at 11 (citing in support **Williams**, *supra*).

Though **McNeal** contemplated that illness *may* constitute an extraordinary circumstance, **see McNeal**, 120 A.3d at 323, as noted previously, we did not examine this possibility in any detail. To the contrary, in **McNeal**, we characterized the transfer of the case as "mere happenstance" and "random chance," the result of a conversation between jurists on a completely unrelated civil matter. **Id.** at 324. Moreover, an illness or some other medical absence could be quite serious, as in **Williams**, or a rather mundane affair, certainly not extraordinary. We reiterate that in **Williams**, the judge's absence was caused by "the sudden onset of illness," which apparently "thereafter precluded his involvement in the rigorous duties inherent in the criminal court." **Williams**, 375 A.2d at 158. Thus, in our view, based upon the reasoning in **McNeal** and **Williams**, a temporary and planned medical absence would not likely constitute an extraordinary circumstance sufficient to meet the requirements of Rule 700.

Here, the record is not sufficiently clear that we may determine whether the circumstances of this case more closely align with **McNeal** or **Williams**.[9] Nevertheless, we need not remand for further development of the record, for we conclude that Banks is not entitled to a new violation hearing, as he consented to Judge Ludgate's authority to preside over this case.

Again, we turn to **McNeal** for guidance. During pretrial discussions in that case concerning the grading of a criminal mischief charge, the presiding judge announced that he was assuming supervision of the defendant's probation matter and warned the defendant that if he found him guilty of the criminal mischief charge, now graded as a summary offense, it would constitute a violation of the defendant's probation. **McNeal**, 120 A.3d at 317. The defendant voiced concern over the reassignment, which was rejected by the presiding judge. **Id.** at 319. The matter proceeded to trial; a jury acquitted the defendant of all charges before it; but the presiding judge found him guilty of the outstanding criminal mischief charge. **Id.** at 319-20. Prior to sentencing, the defendant filed a motion for extraordinary relief, challenging the reassignment of his probation matter. **Id.** Finding no circumstances, "whether extraordinary or even pedestrian," that would

---

[9] In light of the pointed language used by this Court in **McNeal**, we stress that we intend no such criticism of Judge Bortner's role in this matter. We merely conclude that the record does not disclose sufficient detail of the circumstances leading to his absence to determine whether they would constitute extraordinary circumstances. In other words, it is not clear whether the temporary reassignment of this matter to Judge Ludgate was a matter of convenience or judicial economy, as in **McNeal**, or truly extraordinary circumstances, as in **Williams**.

empower one judge "to reach out and take control" over another's case, we observed that "[o]nly the consent of both parties would permit such a maneuver." *McNeal*, 120 A.3d at 323.

Here, when questioned whether he was willing to proceed with the revocation hearing before Judge Ludgate, counsel for Banks offered no resistance and lodged no objection, responding simply:

[BANKS' COUNSEL]: Yeah, we can proceed. That's fine.

N.T. Revocation at 3. Further, unlike the defendant in *McNeal*, Banks delayed any challenge to Judge Ludgate's supervision until after she had imposed sentence. *See* Banks' Post-Sentence Motion. For these reasons, we conclude that Banks' reliance upon *McNeal* is misplaced. Specifically, Banks consented to Judge Ludgate's authority to preside over his violation hearing, and we deem waived any challenge thereto. *McNeal*, 120 A.3d at 323; *see also Cartrette*, 83 A.3d at 1033-34.[10]

In his second issue, Banks contends that the revocation court imposed an excessive sentence. Banks' Br. at 20. According to Banks, the court improperly considered and was "unusually fixated" on facts alleged in support of the *nolle prossed* charges. *Id.* Suggesting that IP revocation is improper when it is based solely upon an arrest, Banks notes the longstanding

---

[10] In light of our conclusions, we need not address the merit of Banks' argument regarding the coordinate jurisdiction rule.

preference in Pennsylvania to defer final revocation proceedings[11] until after new charges are resolved. *Id.* at 20-21 (citing in support *Commonwealth v. Brown*, 469 A.2d 1371 (Pa. 1983)). Thus, Banks concludes, the revocation court abused its discretion. *Id.* at 21.

Banks challenges discretionary aspects of his sentence. Such a claim is not appealable as of right. *Commonwealth v. Colon*, 102 A.3d 1033, 1042 (Pa.Super. 2014); *Cartrette*, 83 A.3d at 1042. Rather, an appellant must petition this Court for allowance of appeal pursuant to 42 Pa.C.S. § 9781. *Colon*, 102 A.3d at 1042. Before we exercise jurisdiction to reach the merits of a claim, we must determine: (1) whether the appeal is timely; (2) whether the appellant has preserved his issue; (3) whether his brief includes a concise statement of the reasons relied upon for allowance of an appeal with respect to the discretionary aspects of his sentence; and (4) whether the concise statement raises a substantial question whether the sentence is inappropriate under the Sentencing Code. *Id.* at 1042-43; *see also* Pa.R.A.P. 2119(f) (mandating that an appellant "set forth in a separate section … the reasons relied upon for allowance of appeal"). Only if the appeal satisfies each of these four requirements may we proceed to decide the substantive merits of the

---

[11] *See Gagnon v. Scarpelli*, 411 U.S. 778 (1973) (outlining a two-step process to determine (1) whether probable cause exists to believe a violation has occurred, *i.e.*, a *Gagnon I* hearing, and (2) whether, in fact, a violation has occurred, a *Gagnon II* hearing); *see also Commonwealth v. Sims*, 770 A.2d 346, 349-50 (Pa.Super. 2001).

claim. **Colon**, 102 A.3d at 1043. In so doing, we review the sentence imposed by the revocation court for an abuse of discretion. **Id.**

Following reinstatement of his appellate rights, Banks timely filed a notice of appeal; he properly preserved his issue in a post-sentence motion; and his brief contains a concise statement of the reasons on which he relies. Banks' Br. at 13-14. Thus, we must determine whether Banks has raised a substantial question.

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

**Commonwealth v. Derry**, 150 A.3d 987, 991 (Pa.Super. 2016) (formatting modified; internal citations and quotation marks omitted). We do not accept bald assertions that a sentence is excessive. **Id.**

Banks asserts that the revocation court relied upon an impermissible factor in sentencing him. Banks' Br. at 13 (citing in support **Commonwealth v. Allen**, 24 A.3d 1058 (Pa.Super. 2011)). It is well settled that "a claim that the sentencing court relied on impermissible factors in sentencing raises a substantial question." **Commonwealth v. Bromley**, 862 A.2d 598, 605 (Pa.Super. 2004) (citing **Commonwealth v. Kraft**, 737 A.2d 755 (Pa.Super. 1999)).

In support of this assertion, Banks suggests that it was impermissible for the revocation court to consider his arrest on charges that were *nolle*

*prossed* prior to the revocation hearing. Banks' Br. at 13 (citing in support **Commonwealth v. Sims**, 770 A.2d 346 (Pa.Super. 2001)), 18, 20.

In our view, **Sims** is inapposite. In that case, a defendant serving a probationary sentence incurred new charges. **Sims**, 770 A.2d at 348. The defendant waived his right to a preliminary revocation hearing. **Id.** Thereafter, failing to present substantive evidence in support of the new charges, the Commonwealth suggested that the defendant's waiver was sufficient to establish that a violation had occurred, and the revocation court agreed. **Id.** at 349. On appeal, we reversed:

> We know of no law that allows for probation to be revoked solely on the basis of an arrest and waiver of a preliminary hearing. On the contrary, we have found that an arrest alone, without facts to support the arrest, is not sufficient to revoke probation or parole.

**Id.** at 352.

Our analysis in **Sims** focused on the Commonwealth's burden of proof during revocation proceedings, an issue irrelevant here, as Banks does not challenge the revocation of his IP sentence. **See id.** at 349-52. Moreover, we did not hold that it is impermissible for a revocation court to consider a probationer's arrest, merely that evidence of an arrest, absent facts to support it, is insufficient to establish a violation. **Id.** Finally, there is no discussion – and certainly no prohibition - of such evidence's relevance to sentencing considerations. **Id.**; **see also** 42 Pa.C.S. § 9771(c)(2) (mandating that the court consider conduct by the probationer that indicates likelihood that he will commit another crime if not imprisoned).

Little more persuasive is Banks' reliance upon our Supreme Court's decision in **Brown**. **See** Banks' Br. at 20-21. There, a probationer received new charges. **Brown**, 469 A.2d at 1372. The Commonwealth deferred revocation proceedings until after their disposition. **Id.** The trial resulted in an acquittal by jury, but the Commonwealth pursued revocation proceedings nonetheless. **Id.** The lower court revoked probation and imposed a new sentence, and this Court affirmed. **Id.**

The Supreme Court reversed. **Id.** Recognizing double jeopardy implications, the Court concluded that the Commonwealth was estopped from proceeding with revocation proceedings where their sole basis was new charges for which a probationer had been acquitted. **Id.** at 1376. The Court also considered and rejected the Commonwealth's suggestion that the more lenient burden of proof in revocation proceedings should afford them a "second bite of the apple." **Id.**

> Thus[,] the problem presented in this law suit is merely whether the Commonwealth, after having elected to defer to the judgment of the jury, should be given the additional opportunity to relitigate the same issue applying a preponderance of the evidence test. We do not believe that there is any justification for such a disparity.

**Id.** at 1377-78.

However, we cannot ignore that the precise issue of fact resolved by the jury in **Brown** was of particular importance to the Supreme Court:

> In this matter at the trial of the criminal charge[,] the appellant defended on the ground of alibi. The defense at trial produced evidence to establish that he was elsewhere at the time of the

- 20 -

alleged robbery. There was no dispute that a robbery of the victim had occurred. Thus[,] the only rational explanation to be drawn from the general verdict of acquittal was that the jury concluded that appellant did not participate in the criminal act of robbing the victim.

It is equally beyond dispute on this record that the sole basis offered by the Commonwealth to support its request for the revocation of the probation was the accusation that appellant did in fact participate in the robbery for which he had previously been tried and acquitted. Thus the Commonwealth, by election, chose to relitigate at the revocation hearing the exact same issue that had been decided against it in the criminal trial. This, therefore, is a clear case of an attempt to raise an issue of ultimate fact that has previously been litigated and ruled adversely to the Commonwealth.

*Id.* at 1373.

Here, no similar factual resolution occurred; that is, a fact finder did not consider and reject Banks' participation in alleged criminal activity. Nor is the procedural posture analogous. The charges against Banks were *nolle prossed*, and that is quite different from an acquittal.

A *nolle prosequi* is a voluntary withdrawal by a prosecuting attorney of proceedings on a particular criminal bill or information, which at anytime in the future can be lifted upon appropriate motion in order to permit a revival of the original criminal bill or information. Since a *nolle prosequi* acts neither as an acquittal nor a conviction, *double jeopardy does not attach to the original criminal bill or information*.

***Commonwealth v. Ahearn***, 670 A.2d 133, 135 (Pa. 1996) (citations omitted) (emphasis added). Thus, the double jeopardy concerns recognized in **Brown** are not present here.

The Commonwealth was not estopped from introducing evidence of Banks' arrest, the charges filed, or the factual allegations in support thereof.

The revocation court's consideration of this evidence was not only permissible, but also required before it could impose a sentence of total confinement. For these reasons, we reject Banks' assertion that the revocation court relied upon an impermissible factor in sentencing him. **See** Banks' Br. at 13-14.

Based upon the revocation court's permissible consideration of this evidence, and Banks' failure to develop any further argument asserting that his sentence is excessive, we discern no abuse of the court's discretion in sentencing Banks. **See Colon**, 102 A.3d at 1043.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/29/2018