J-A01002-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BYSIL MAJOR | : | |
| | : | |
| Appellant | : | No. 613 EDA 2018 |

Appeal from the Judgment of Sentence February 9, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0003833-2016

BEFORE:   NICHOLS, J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY NICHOLS, J.:                **FILED OCTOBER 28, 2020**

Appellant Bysil Major appeals from the judgment of sentence imposed following the revocation of his probation.  Appellant argues that the trial court infringed upon his right to counsel of his choice by denying his request for a continuance.  Appellant also contends that the trial court erred in denying his motion to continue the violation of probation (VOP) hearing pending the disposition of the new charges.  Lastly, Appellant challenges the sufficiency of the evidence supporting the probation violation.  We affirm.

The trial court thoroughly summarized the underlying facts and procedural history of this matter.  **See** Trial Ct. Op. at 1-5.  Briefly, Appellant was arrested and charged with possession with intent to deliver a controlled

_____

[*] Retired Senior Judge assigned to the Superior Court.

substance (PWID), knowing and intentional possession, and conspiracy on December 1, 2015.[1] On September 20, 2016, Appellant entered a negotiated guilty plea to PWID. That same day, the trial court sentenced Appellant to an agreed-upon term of thirty months' reporting probation. As part of his probation, Appellant was ordered to pay mandatory court costs, participate in vocational training, and maintain employment. *See* Trial Ct. Order, 9/20/16. At the hearing, Appellant was represented by private counsel, A. Charles Peruto, Esq. (Attorney Peruto).

On August 18, 2017, while Appellant was on probation, he was arrested and charged with PWID, resisting arrest, and possession of a controlled substance.[2] *See* Docket No. MC-51-CR-0024692-2017. Appellant's probation officer issued a bench warrant violation and the trial court held a *Gagnon I*[3] hearing on September 18, 2017.

On September 26, 2017, the Commonwealth filed a motion to proceed with the VOP hearing pursuant to *Commonwealth v. Kates*, 305 A.2d 701 (Pa. 1973) (holding that it is constitutionally permissible to hold a probation revocation hearing after arrest, but prior to trial, on a charge that constitutes

_____

[1] 35 P.S. §§ 780-113(a)(30), (16), and 18 Pa.C.S. § 903(c), respectively.

[2] 35 P.S. § 780-113(a)(30), 18 Pa.C.S. § 5104, and 35 P.S. § 780-113(a)(16), respectively.

[3] *Gagnon v. Scarpelli*, 411 U.S. 778 (1973).

a probation violation) (***Daisy Kates***). The trial court listed the matter for a status hearing on September 28, 2017.

At the status hearing, Attorney Peruto indicated that although he had represented Appellant during the negotiated plea proceedings, he had not been retained to represent Appellant for purposes of his VOP. ***See*** N.T. Status Hr'g, 9/28/17, at 1. The trial court granted Attorney Peruto's request to withdraw and agreed to appoint counsel on Appellant's behalf. ***Id.*** The matter was re-listed for October 19, 2017, at which time the trial court appointed Stephen Seidel, Esq. (appointed counsel) to represent Appellant. The trial court again re-listed the matter for October 27, 2017, but ultimately moved the hearing to November 29, 2017 to accommodate appointed counsel's schedule.[4] ***See*** N.T. VOP Hr'g, 11/29/17, at 7.

At the November 29, 2017 hearing, appointed counsel informed the trial court that Appellant had apparently re-retained Attorney Peruto's office for the VOP hearing, although Attorney Peruto had not formally entered his appearance. ***See id.*** at 5. At that time, Attorney Peruto's associate, Scott Sigman, Esq. (Attorney Sigman) appeared on Attorney Peruto's behalf.[5] ***Id.*** at 9. Attorney Sigman indicated that Attorney Peruto was in Montgomery

---

[4] The trial court docket indicates that appointed counsel and the Commonwealth were attached for the rescheduled VOP hearing.

[5] The record indicates that Attorney Sigman had previously appeared on Appellant's behalf at prior hearings when Attorney Peruto was unavailable for court.

- 3 -

County handling another matter and requested that the trial court delay the VOP hearing until later that afternoon. *Id.* at 12.

The trial court indicated that it had other matters scheduled for that day and that the Commonwealth was ready to proceed with a police witness, who had been subpoenaed for the hearing. *Id.* at 11. The trial court further explained that

> [o]n September 28, [2017], Attorney Peruto stated that he was not going to represent Appellant and that was why this [c]ourt appointed counsel, and, quite frankly, used taxpayers' money to do so. In retrospect, I should have probably checked further to see if [Appellant] could afford counsel, but it was represented to this court that he [c]ould not, and obviously he was in custody, so in fairness to [Appellant], I appointed counsel on his behalf. So then it was continued to [October 19th] and on that date, still, you know, there was a difficulty with whoever was going to be appointed. I rolled it over again to October 27, and then from that date . . . rescheduled it [for today]. So there were close to three months during which [Appellant] could have resolved this otherwise and did not. The fact that he or someone on his behalf chose to attempt to retain your office last night, which, you know, on the eve of a hearing, whether today or tomorrow,[6] it is of no import to me, because that's just not the way we do things. I'm going to proceed with the [VOP] hearing as previously scheduled.
>
> Now, right now I have [appointed counsel] as [counsel of record]. Unless you wish to represent him in the hearing now, I'll consider that, but otherwise we're going forward. I'm not going to wait for [Attorney] Peruto.

*Id.* at 13-15.

---

[6] The record indicates that the trial court had another matter scheduled for trial on the same day as Appellant's VOP hearing. However, the trial court did not yet know whether that matter would result in a plea or if it would proceed to trial.

- 4 -

After Attorney Sigman stated that he would represent Appellant, the trial court provided additional time for Attorney Sigman and appointed counsel to discuss Appellant's case before proceeding with the hearing. *Id.* at 16. The trial court then conducted a colloquy to confirm that Appellant understood his rights. *Id.* at 17-24. The trial court explained to Appellant that Attorney Peruto was unavailable and that he had not entered his appearance in Appellant's case. *Id.* at 17. Appellant stated that he wanted Attorney Sigman to represent him for the hearing. *Id.* The trial court ultimately concluded that

> [b]ased upon this [c]ourt's inquiry with [Appellant] and with counsels' representations and with the additional time that was afforded to [Attorney] Sigman to consult with [Attorney] Seidel and prepare with this matter, I'm satisfied that [Attorney] Sigman can proceed, and I'm satisfied that [Appellant's] decision to have [Attorney] Sigman represent him at this point in time is knowing, intelligent and voluntary.

*Id.* at 24.

At the start of the VOP hearing, Attorney Sigman made an oral motion to suppress, arguing that the police

> lacked probable cause and/or reasonable suspicion to ever stop or pull over [Appellant's] vehicle. This was a vehicle-stop case. The vehicle was pulled over by police without having any reasonable suspicion and/or probable cause to do so.
>
> After doing so, he was questioned, provided all documentation, and they still proceeded to do further things in violation of his constitutional rights under the Pennsylvania and the United States constitutions.

*Id.* at 25.

Further, Attorney Sigman stated:

I'll put an objection and motion on the record that my client would prefer to have or request to have a jury trial in this matter, a motion to suppress in this matter on the underlying case. There would be no harm or prejudice of the Commonwealth because [Appellant is] in custody. He's not going anywhere. He would prefer to proceed with his motion to suppress, his preliminary hearing, his jury trial. He intends to fight [his new charges] to the fullest extent of the law. He would obviously remain detained on Your Honor's detainer. There would be no harm to the Commonwealth. He's not going anywhere.

*Id.* at 26-27. The trial court agreed to consider Appellant's suppression motion, but denied his request to continue the matter pending the resolution of the new charges. *Id.*

The Commonwealth presented Officer Vincent Hall, who testified regarding the circumstances of Appellant's arrest for the new charges. *Id.* at 28. In explaining the reasons for stopping Appellant's vehicle, Officer Hall stated that Appellant's windows had a "medium tint," which was "dark, but you could see through it." *Id.* at 31. Officer Hall also indicated that Appellant had a "clear, plastic cover" on his license plate. *Id.* Officer Hall explained that motorists are "not allowed to have those over the license plate [because] when the light hits it a certain way you can't read the plate." *Id.*

Officer Hall testified that when he stopped Appellant, he detected "a strong odor of raw marijuana coming from the vehicle." *Id.* at 29. After running Appellant's license, Officer Hall "observed a package in the rear seat of the vehicle." *Id.* At that time, Officer Hall "removed [Appellant and] placed him in the patrol car," at which time Appellant "began to actively resist." *Id.* at 29-30. Officer Hall stated that Appellant eventually ended up on the ground

- 6 -

struggling with both Officer Hall and his partner, Officer Monaghan.[7]  ***Id.***  After sixty seconds, Officer Hall stated that Appellant broke free and began running down the street.  ***Id.*** at 30.  At that time, Officer Monaghan "gave chase," while Officer Hall remained at Appellant's vehicle and called for backup.  ***Id.*** After backup officers arrived, Officer Hall drove his patrol vehicle down the street and located Appellant and Officer Monaghan.  ***Id.***  Although Appellant was "still resisting," the officers were able to place Appellant in handcuffs and effectuate the arrest.  ***Id.***

After Officer Hall returned to Appellant's vehicle, he recovered the package from Appellant's car, which was a vacuum-sealed bag that appeared to contain marijuana.  ***Id.***  Officer Hall testified that a narcotics identification test (NIK test) came back positive for marijuana.  ***Id.*** at 30.  He also testified to the contents of a property receipt, in which Officer Hall stated that police recovered a "[g]reen leafy substance, wrapped in vacuum-sealed plastic, approximately 520-grams.  And one sandwich bag containing a green leafy substance.  540-grams total."  ***Id.*** at 35; ***see also*** Ex. C-1.  The property receipt also confirmed the results of the field test.  ***Id.***

Ultimately, the trial court denied Appellant's suppression motion, explaining that Officer Hall provided credible testimony to establish the basis for the vehicle stop and for Appellant's subsequent arrest.  ***Id.*** at 58.  Further, the trial court explained that

---

[7] Officer Monaghan's first name does not appear in the record.

The narcotics were in clear view of the officer after [he smelled] the marijuana. It doesn't take a rocket scientist to figure out that one and one often makes two. And [Appellant's] actions, more importantly, in response to the command of the officer to step out of the vehicle and go towards his vehicle [were] illuminating. He fought with these officers a great deal. And that is called consciousness of guilt. It's also called resisting arrest.

So at every step, the officer was justified in doing what he did. There was no violation [of Appellant's rights]. I'm finding that as a matter of law and fact with respect to this motion. With respect to the circumstances as testified to by this officer, I'm finding that indeed this defendant did violate the terms of this [c]ourt's supervision by his criminal activity as testified to. So I find that there was a clear violation and I'm revoking his probation.

*Id.* at 59-60.

The trial court deferred sentencing for preparation of a pre-sentence investigation (PSI) report and a mental health evaluation. *Id.* at 60. On February 9, 2018, the trial court sentenced Appellant to a term of two to five years' imprisonment.[8] Sentencing Order, 2/9/18, at 1.

Appellant filed a timely notice of appeal on February 12, 2018. He subsequently filed a timely court-ordered Pa.R.A.P. 1925(b) statement. The trial court filed a responsive Rule 1925(a) opinion addressing Appellant's claims.

Appellant raises the following issues for our review:

1. Whether the trial court erred by depriving [Appellant] of his choice of his counsel on November 29, 2017, the day of the **Daisy Kates** hearing, in that the trial court judge would not wait until 2:00 p.m., for [Attorney] Peruto to appear, after he

_____

[8] The certified record does not contain a transcript of the sentencing hearing.

- 8 -

was just retained the night before, and he was the counsel of choice of [Appellant].

2. Whether the trial court erred by not continuing the November 29, 2017 *Daisy Kates* hearing since the new arrest had not even had a preliminary hearing and [Appellant] could have re-butted the testimony of the arresting officer but didn't want to testify at the *Daisy Kates* hearing because any testimony he made in court could be used against him for cross examination at any future proceeding, *i.e.* motion to suppress and trial of this very case.

3. Whether the trial court erred by finding a violation when the Commonwealth failed to provide a seizure analysis and/or expert scientific testimony concerning the chemical analysis of the alleged contraband.

Appellant's Brief at xiv.

In his first issue, Appellant argues that the trial court infringed upon Appellant's right to counsel of his choice by refusing to continue the VOP hearing in order to accommodate Attorney Peruto's schedule. *Id.* at 19. Specifically, Appellant asserts that the trial court denied his continuance request without balancing his right to counsel of his choice against the Commonwealth's interest in expediency. *Id.* at 22. Further, Appellant asserts that the Commonwealth took no position on the continuance request, offered no argument, and "appeared to have no interest that would be affected by the change in counsel and brief adjournment." *Id.* at 23. Therefore, Appellant contends that his "right to privately retained counsel should have prevailed." *Id.*

The Commonwealth responds that under the specific facts of the case, the trial court did not abuse its discretion in denying Appellant's request to

continue the matter until later that same day. Commonwealth's Brief at 10. The Commonwealth notes that "[Attorney] Peruto initially represented [Appellant] at the trial stage, and affirmatively withdrew from representing him on the subsequent [VOP]." *Id.* at 8. The Commonwealth asserts that, as a result of Attorney Peruto's withdrawal, the VOP matter was delayed for two months in order for the trial court to appoint new counsel and then to accommodate appointed counsel's schedule and allow him time to prepare the case. *Id.* at 9. The Commonwealth contends that during the two-month period, Appellant "could have retained any counsel of his choosing. Instead, he waited until the night before his scheduled [VOP] hearing." *Id.* Further, although Attorney Peruto represented Appellant in his original guilty plea, the Commonwealth argues that "nothing in the record suggests that he was informed about the circumstances of [Appellant's] new arrest that formed the basis of his alleged direct violation of probation." *Id.* Instead, Attorney Peruto's associate, Attorney Sigman, "who had appeared on [Appellant's] behalf in the past, was present and prepared to represent [Appellant]" for the VOP hearing. *Id.* The Commonwealth adds that the trial court also "delayed the hearing to allow [Attorney] Sigman to discuss the case with [appointed counsel], who had also appeared and [was] prepared to represent [Appellant]." *Id.* The Commonwealth concludes that, "[g]iven these facts, the trial court did not abuse its discretion in denying defendant's request to delay his [VOP] hearing." *Id.*

We review a trial court's grant or denial of a continuance for an abuse of discretion. ***Commonwealth v. Brooks***, 104 A.3d 466, 469 (Pa. 2014). As our Supreme Court has explained:

> Appellate review of a trial court's continuance decision is deferential. The grant or denial of a motion for a continuance is within the sound discretion of the trial court and will be reversed only upon a showing of an abuse of discretion. As we have consistently stated, an abuse of discretion is not merely an error of judgment. Rather, discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record.

***Id.*** (internal quotation and citation omitted).

A defendant's right to counsel, which is guaranteed by both the Sixth Amendment to the U.S. Constitution and Article I, Section 9 of the Pennsylvania Constitution, guarantees the accused the right "to choose at his own cost and expense any lawyer he may desire." ***Commonwealth v. Radecki***, 180 A.3d 441, 472 (Pa. Super. 2018) (citations and quotations omitted). However, these rights are not absolute, and a trial court must balance them against the state's interests and may impose reasonable restrictions to secure "the swift and efficient administration of criminal justice." ***Id.*** at 473 (citations and quotation marks omitted). Defendants may not "unreasonably clog the machinery of justice or hamper and delay the state's efforts to effectively administer justice." ***Id.*** (citations and quotation marks omitted).

This Court has explained:

- 11 -

In examining whether a trial court abused its discretion in refusing to grant a continuance for a defendant to retain new counsel, Pennsylvania courts have historically looked at several factors. We have generally found that a trial court did not abuse its discretion in denying a request for a continuance to retain new counsel where the trial court conducted an "extensive inquiry" into the underlying causes of [a] defendant's dissatisfaction with current counsel and based upon that inquiry determined that the differences did not constitute "irreconcilable differences."

We have also looked to the number of prior continuances in the matter, the timing of the motion, whether private counsel had actually been retained, and the readiness of private counsel to proceed in a reasonable amount of time.

*Commonwealth v. Prysock*, 972 A.2d 539, 542-43 (Pa. Super. 2009) (citations omitted).

More recently, our Supreme Court emphasized that a "trial court is authorized to manage its own trial schedule; the silence of the Commonwealth, or even the agreement of the Commonwealth, does not control a judge's exercise of discretion in such matters." *Brooks*, 104 A.3d at 477. Further, the *Brooks* Court stated that there was "some force" to the Commonwealth's argument "that the burden is upon the party requesting a continuance to support that request." *Id; see also Commonwealth v. Fleming*, 480 A.2d 1214, 1221 (Pa. Super. 1984) (stating that, when reviewing the denial of a continuance motion, appellate courts "are to give attention to the 'reasons presented to the trial judge at the time the request is denied.'" (quoting *Commonwealth v. Wolfe*, 447 A.2d 305, 308 (Pa. Super. 1982)).

As the *Brooks* Court explained,

- 12 -

the trial court does not have an obligation to assume that the request must be granted, and then probe the party (here, a defendant represented by counsel) for support for the request, or to find weaknesses in the request. . . .

In any event, the record in this case reveals that the trial court did more than simply deny the request for a continuance. The court was aware of the circumstances surrounding appellee's request; the court's colloquy of appellee, and its exchanges with counsel, properly informed its exercise of discretion.

*Brooks*, 104 A.3d at 477.

Here, the trial court addressed Appellant's continuance request as follows:

Appellant initially argued that [the trial court] had erred by depriving Appellant of his choice or preference of counsel for the [VOP] hearing conducted on November 29, 2017 when [the trial court] refused to grant another defense delay request following the last minute reentry of [Attorney] Peruto as counsel. Appellant claimed prejudicial error, citing [the trial court's] single refusal to continue the violation hearing from 9:00 a.m. when it was scheduled to begin until 2:00 p.m. which was when it was represented by [Attorney] Sigman that morning that [Attorney] Peruto could possibly grace the [trial court] with his returned presence. This appellate claim negated the documented contextual and procedural history of the violation hearing and the existing legal authorities which did not grant Appellant any right to continued delay to accommodate preferential choice of counsel. A thorough review of the record demonstrated that zero error had occurred.

\* \* \*

[The trial court] in the instant matter had generously granted two prior continuance requests of the duly scheduled violation hearing on behalf of the Appellant. [The trial court] also had granted the request of [Attorney Peruto] to be removed as Appellant's counsel after hearing argument, and appointed counsel on behalf of Appellant at taxpayer's expense to insure protection of Appellant's constitutional rights. Literally on the day of the third listing of the violation hearing November 29, 2017, after multiple months of delay and after appointed counsel had entered his appearance and

- 13 -

appeared prepared to represent Appellant, [Attorney Peruto]'s reentry of appearance was filed presumably by his associate [Attorney Sigman] with [the] county clerk's office.

Commensurate with filing of the reentry form, [Attorney Sigman] . . . physically appeared in the courtroom on behalf of Appellant on that same morning of the violation hearing November 29, 2017 and verbally requested [the trial court's] approval of [Attorney] Peruto's late reentry and delay to accommodate [Attorney] Peruto's possible appearance given his busy schedule until at least 2:00 p.m. At 9:00 a.m. when the violation hearing was scheduled to proceed, the Commonwealth was ready with summoned witnesses and evidence present in the courtroom at 9:00 a.m. [Appointed Counsel] also appeared ready as counsel of record.

Following an extensive colloquy and private discussions between Appellant, [Attorney Sigman, and appointed counsel], all parties and counsel and [the trial court] agreed that [Attorney Sigman] could represent Appellant at the violation hearing and that [appointed counsel] would be relieved of service. Additionally, [Attorney] Sigman was given additional time to prepare and privately meet with Appellant prior to the violation hearing. [The trial court] had properly acted with due discretion by proceeding with Appellant's violation of probation hearing on the scheduled day.

Trial Ct. Op. at 6-9 (some formatting altered).

Based on our review of the record, we discern no abuse of discretion by the trial court in denying Appellant's request for a continuance. *See Brooks*, 104 A.3d at 469, 477. As noted previously, Appellant did not indicate that he had irreconcilable differences with appointed counsel or that he was dissatisfied with appointed counsel's representation. Instead, Appellant stated his preference to proceed with Attorney Peruto, who had previously withdrawn from Appellant's case but had not formally entered his appearance in Appellant's VOP matter. Moreover, there was no indication that Attorney Peruto was ready to proceed with the VOP hearing, even if the trial court had

- 14 -

granted Appellant's request. Lastly, our review of the record confirms that the trial court was fully aware of the circumstances surrounding Appellant's request and was further informed by Appellant's statements during the colloquy and the discussions with counsel. *See id.* Therefore, Appellant is not entitled to relief on his claim concerning his preference of counsel.

In his second issue, Appellant argues that the trial court erred by denying his request to continue the VOP hearing until after Appellant's new charges were resolved. Appellant's Brief at 24. However, beyond this general assertion, Appellant does not develop his claim. Instead, Appellant contends that the arguments supporting his first and second appellate issues on "go hand-in-hand and are one in the same." *Id.* at 10.

The Commonwealth responds that Appellant waived his claim by failing to properly present the argument in his brief.[9] Commonwealth's Brief at 10. We agree.

---

[9] The Commonwealth acknowledges that Appellant's new charges were ultimately *nolle prossed* and that the Philadelphia District Attorney's "current office policy is to seek deferral of hearings on direct probation violations until after trial on the new alleged criminal behavior." Commonwealth's Brief at 11.

Nonetheless, as this Court recently explained, "although the *Kates* decision from 1973 permits a VOP court to conduct a revocation of probation hearing prior to trial on the underlying charges, more recently our Supreme Court has cautioned against proceeding in this manner." *Commonwealth v. Giliam*, 233 A.3d 863, 869 (Pa. Super. 2020) (footnote omitted). "[I]n many cases it may be 'preferable to defer [a VOP] hearing until after the trial, thus avoiding the possibly unjust result of revoking probation, only to find later that the probationer has been acquitted of the charges that prompted the revocation

It is well settled that "[w]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." *Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009) (citations omitted).

Here, Appellant provides no legal authority to support his claim, nor does he develop any meaningful analysis. Therefore, Appellant's claim is waived.[10] *See id.*; *see also* Pa.R.A.P. 2119(a); *see also Commonwealth v. Smyrnes*, 154 A.3d 741, 748 (Pa. 2017) (holding that waiver is required where the appellant's argument was not sufficiently developed to allow for meaningful review).

In his final issue, Appellant argues that there was insufficient evidence to support a probation violation because the Commonwealth failed to present a seizure analysis or expert testimony to confirm that the substance seized

---

hearing.'" *Id.* (citation omitted). However, where charges forming the basis of the revocation are *nolle prossed*, it does not have the same preclusive effect as an acquittal. *See Commonwealth v. Banks*, 198 A.3d 391, 403 (Pa. Super. 2018) (reiterating that "a *nolle prosequi* is a voluntary withdrawal by a prosecuting attorney of proceedings on a particular criminal bill or information, which at any time in the future can be lifted upon appropriate motion in order to permit a revival of the original criminal bill or information").

[10] However, we share the concern of the *Giliam* Court that, although the 1973 *Kates* decision permits such a revocation of probation hearing prior to the trial of the pending charges, probation could be revoked for charges for which the probationer is subsequently acquitted; or as in this case, Appellant's new charges are *nolle prossed*, in that the Commonwealth opted not to go forward with the prosecution of the case. *See Banks*, 198 A.3d at 403.

from Appellant was marijuana. Appellant's Brief at 12-13. Further, Appellant maintains that, because the Commonwealth did not qualify Officer Hall as an expert, his testimony regarding the identity of the substance is inadmissible hearsay. *Id.* at 30. Therefore, Appellant contends that there was insufficient evidence to support the violation. *Id.*

The Commonwealth responds that Appellant's evidentiary challenge is waived because he failed to object to the evidence at the VOP hearing. Commonwealth's Brief at 14. Nonetheless, the Commonwealth contends that there was sufficient evidence to establish that Appellant violated his probation. *Id.* at 19. The Commonwealth argues that neither chemical evidence nor expert testimony are necessary to prove "that contraband is a controlled substance." *Id.* at 17. Further, the Commonwealth asserts that Officer Hall testified to his observations at the time of the arrest and did not offer an improper opinion. *Id.* at 18. Specifically, the Commonwealth notes that Officer Hall "testified that he smelled marijuana upon approaching [Appellant's] car, saw a vacuum-sealed package containing a green, leafy substance[,] packaged consistently with marijuana he had recovered in other cases, and received positive results for marijuana from a NIK field test." *Id.* at 19. Additionally, Officer Hall "testified that [Appellant] resisted arrest by struggling with him and his partner and fleeing. This was sufficient to find that [Appellant] violated his probation." *Id.*

When considering an appeal from a sentence imposed following the revocation of probation, "[o]ur review is limited to determining the validity of

the probation revocation proceedings and the authority of the sentencing court to consider the same sentencing alternatives that it had at the time of the initial sentencing." *Commonwealth v. Perreault*, 930 A.2d 553, 557 (Pa. Super. 2007) (citation and quotation marks omitted); *see also* 42 Pa.C.S. § 9771(b). "Revocation of a probation sentence is a matter committed to the sound discretion of the trial court, and that court's decision will not be disturbed on appeal in the absence of an error of law or an abuse of discretion." *Commonwealth v. McNeal*, 120 A.3d 313, 322 (Pa. Super. 2015).

In order to revoke a defendant's probation, "the VOP court must find, based on the preponderance of the evidence, that the probationer violated a specific condition of probation or committed a new crime . . . ." *Commonwealth v. Foster*, 214 A.3d 1240, 1243 (Pa. 2019); *see also* 42 Pa.C.S. § 9771. "Unlike a criminal trial where the burden is upon the Commonwealth to establish all of the requisite elements of the offenses charged beyond a reasonable doubt, at a revocation hearing the Commonwealth need only prove a violation of . . . probation by a preponderance of the evidence." *Commonwealth v. Moriarity*, 180 A.3d 1279, 1286 (Pa. Super. 2018) (citation and quotation marks omitted). As our Supreme Court has explained, "preponderance of the evidence is 'a more likely than not inquiry,' supported by the greater weight of the evidence; something a reasonable person would accept as sufficient to support a decision."

***Commonwealth v. Batts***, 163 A.3d 410, 453 (Pa. 2017) (citations omitted and some formatting altered).

In cases where a defendant has not yet been convicted of new charges, the Commonwealth may establish a direct violation by presenting evidence to demonstrate that a crime occurred. ***Banks***, 198 A.3d at 403; ***see also Moriarity***, 180 A.3d at 1286 (reiterating that "the threat of revocation may be executed on the basis of an arrest **and evidence of some facts in addition**" but noting that an "arrest alone, without facts to support arrest, is insufficient to revoke" (emphasis in original and citations omitted)).

Here, the trial court addressed Appellant's claim as follows:

> In the instant matter, as part of a very lenient sentence following a negotiated plea to the charge of [PWID,] graded as a felony, Appellant had been specifically directed by this [c]ourt to refrain from any further involvement with illegal narcotics and was duly advised of [the] consequences of a violation. At the violation hearing, the Commonwealth presented compelling and credible evidence from the arresting police officers and submitting into the record as Exhibits C-1 and C-2 without defense objection, the associated property receipts which encompassed the confirmation of positive field testing reflecting the presence of marijuana at the violation hearing. This cumulative evidence demonstrated that Appellant had been stopped in a vehicle for just reasons at a point in time not even halfway through the probationary period of his sentence with approximately a pound of illegal controlled substances, marijuana, in the packaged form readied for lucrative sale. Ironically this activity mirrored the criminal behavior for which Appellant had been under this [c]ourt's supervision after tendering his prior plea of guilt.
>
> The credible testimony introduced from these same arresting officers further proved that . . . just before the arrest[,] officers had smelled the strong recognized odor of marijuana emanating from Appellant's vehicle that he had been driving without any other passengers; that Appellant had committed additional

criminal conduct when he physically fought the officers and resisted lawful arrest; and that 540 grams of green leafy substance bearing all recognized earmarks of packaged marijuana had been confiscated from Appellant's vehicle in plain view; that the same packaging and contents had been duly field tested reflected the presence of marijuana as reflected upon the introduced associated property receipts before submission to the laboratory for subsequent formal analysis. Additionally, Appellant's choice to physically strike and fight the arresting officers displayed his consciousness of guilt. [The trial c]ourt had certainly been presented with enough information to discern that the confiscated narcotics contained the illegal controlled substance of marijuana.

Moreover, in the instant case, at no time was it debated or even mentioned by the defense as a factual issue that the confiscated substance that looked, smelled and was field tested as positive for the presence of marijuana was anything other than marijuana. Indeed at [the] sentencing hearing and within the presentence investigative reports Appellant firmly acknowledged that his sales of marijuana had occurred because he had been severely addicted to that same illegal substance. Similarly, no post sentence motions had been filed citing this issue. Thus it was disingenuous to raise the claim of error due to lack of introduction of formal testing at the violation hearing. In addition, criminally resisting lawful arrest itself constituted a violation of the conditions of probationary supervision. The cumulative evidence sufficiently demonstrated Appellant's violating behavior and reasons for revocation.

Trial Ct. Op. at 13-15 (some formatting altered).

On this record, we find no abuse of discretion by the trial court in finding Appellant in direct violation of his probation based on current law. *See Perreault*, 930 A.2d at 557; *see also McNeal*, 120 A.3d at 322.

Officer Hall testified regarding the circumstances of Appellant's arrest, including his physical altercation with police, his attempt to flee the scene, and the package in Appellant's car that appeared to contain marijuana. *See*

N.T. VOP Hr'g at 28-50. Even without a seizure analysis to confirm the results of the field test, there was sufficient evidence to support the Commonwealth's contention that Appellant resisted arrest, which was also an offense with which Appellant had been charged. Therefore, Appellant is not entitled to relief on this claim. **See Batts**, 163 A.3d at 453; **see also Moriarity**, 180 A.3d at 1286.

Finally, to the extent Appellant argues that Officer Hall's testimony was inadmissible hearsay, we conclude that he waived this issue by failing to object at the VOP hearing. **See Commonwealth v. Baumhammers**, 960 A.2d 59, 73 (Pa. 2008) (reiterating that a defendant's "failure to offer a timely and specific objection" results in waiver (citation and quotation marks omitted)). Accordingly, we affirm.

Judgment of sentence affirmed.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
*Prothonotary*

*Date: 10/28/2020*

- 21 -