J-S41036-20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : IN THE SUPERIOR COURT OF |
| | :        PENNSYLVANIA |
| | : |
| v. | : |
| | : |
| WILLIAM E SCHMITZ, JR., | : |
| | : |
| Appellant | : |
| | : No. 37 MDA 2020 |

Appeal from the Judgment of Sentence Entered October 22, 2019
in the Court of Common Pleas of Centre County
Criminal Division at No(s): CP-14-CR-0001185-2017

BEFORE:   KUNSELMAN, J., MCLAUGHLIN, J. and STRASSBURGER, J.*

MEMORANDUM BY KUNSELMAN, J.:                    **FILED APRIL 23, 2021**

William E. Schmitz, Jr. appeals from judgment of sentence imposed after the court below revoked his intermediate punishment.  We affirm.

The revocation court summarized the facts pertinent to this appeal as follows.

> [Schmitz] pled guilty to one count of driving under the influence (DUI): general impairment/incapable of safe driving - third offense, 75 Pa.C.S. § 3802(a)(1), a misdemeanor of the second degree, and driving while blood alcohol content level is .02 or greater while license is suspended, 75 Pa.C.S. § 1543(b1.1)(I), a summary offense.  On August 25, 2017, [Schmitz] was sentenced to intermediate punishment for a period of [5] years in the Centre County DUI Court Program,[1]

---

[1] Centre County explains the program as follows on its website.

> The Centre County DUI Court is a specialty court targeting high-risk repeat DUI offenders.  It is a post plea/post-conviction court where offenders are sentenced to a five[-]year term of

*(Footnote Continued Next Page)*

---

*Retired Senior Judge assigned to the Superior Court.

with the first [90] days of Schmitz's sentence to be served in the Centre County Correctional Facility, followed by [275] days on the in-home detention and electronic monitoring program. After completion of the restrictive intermediate punishment . . . [Schmitz] was to go through a period of intensive probation supervision for a minimum of [6] months, during which he would be placed on a transdermal alcohol detection monitor for a minimum of [90] days. At the close of intensive probation supervision, [Schmitz] was to serve the remainder of his intermediate punishment sentence on standard probation under the supervision of [the Department].

Revocation Court Opinion, 2/21/2020, at 1-2 (unnecessary capitalization omitted).

*(Footnote Continued)* ———————

Intermediate Punishment beginning with a period of Restrictive Intermediate Punishment []. The [Restrictive Intermediate Punishment] portion of the sentence starts with a period of incarceration (with work release if eligible) followed by house arrest with electronic monitoring for the remainder of the offender's minimum mandatory sentence.

The DUI Court portion of the sentence lasts for a minimum of two years, during which time offenders receive intensive supervision from the DUI Court Coordinator, participate in mandated treatment, undergo random drug and alcohol testing, and appear before the DUI Court Judge on a regular basis for status review hearings. A DUI Court Case Manager works closely with participants to assist them in accessing treatment and ancillary services. Upon successful completion of the DUI Court portion of their sentence, offenders graduate from the program and transition to regular probation supervision for the remainder of their five-year sentence.

Centre County DUI Court Program, https://centrecountypa.gov/811/Centre-County-DUI-Court-Program, last accessed 2/1/2020. The DUI Court Program is coordinated and administered by the Centre County Probation and Parole Department (the Department).

In its 2017 order sentencing Schmitz to probation as part of his five-year intermediate punishment sentence, the sentencing court ordered Schmitz "to abide by all of the rules and regulations established by [the Department] and as required by the Centre County DUI Court Program." Sentencing Order, 8/25/2017, at ¶ 3. The court also specified that Schmitz "shall attend and complete any/all programs deemed appropriate by [the Department] and as recommended by the Centre County DUI Court Team." *Id.* at ¶ 10.

On April 20, 2018, following his release from the Centre County Correctional Institute, Schmitz signed a document entitled Centre County DUI Court Program Conditions of Supervision. The document listed 21 conditions, including the condition at issue, number 17, which required Schmitz to attend 12-step/sober support group meetings and obtain written verification of attendance. N.T., 10/22/2019, at Commonwealth Ex. 1 (Conditions of Supervision, 4/20/2018, at ¶ 17).

On September 12, 2019, the DUI court sanctioned Schmitz for violating condition 17 by not obtaining signatures verifying that he had attended the required number of meetings and ordered him to complete "Enhanced Sober Support Meeting Sheets" until further notice.[2] N.T.,

_____

[2] This was not the first time Schmitz had violated the terms of his intermediate punishment. Revocation Court Opinion, 2/21/2020, at 2. Including the sanction imposed on September 12, 2019, Schmitz was
*(Footnote Continued Next Page)*

3

9/12/2019, at 5. On October 10, 2019, the Department notified the court that Schmitz had violated condition 17 again **and** the sanction imposed by the DUI court by failing "to obtain the proper written verification of attendance." N.T., 10/26/2019, at Commonwealth Ex. 1 (Notification of Violation, 10/10/2019, at 1).

> [Schmitz's] probation[3] was revoked, and on October 22, 2019[,] he was sentenced to a term of incarceration at a State

_(Footnote Continued)_ ─────────────

sanctioned eight times for failure to abide by the terms of his intermediate punishment sentence. **See** N.T., 10/22/2019, at 30; N.T., 12/19/2019, at Commonwealth Exhibit 1.

[3] The revocation court refers to the revocation of Schmitz's **probation** in its Pa.R.A.P. 1925(a) opinion, but technically the court revoked Schmitz's **intermediate punishment**, as Schmitz's probation had been ordered as part of that sentence. **See** Order, 8/25/2017, at ¶ 3 ("Following intensive supervision, you will serve the remainder of this Intermediate Punishment Sentence on standard probation under the supervision of [the. Department].") (emphasis removed); Order, 10/22/2019, at 1 (ordering the revocation of Schmitz's intermediate punishment); **Commonwealth v. Wegley**, 829 A.2d 1148, 1153-54 n.12 (Pa. 2003) (explaining that because probation is both "distinct from, and an available element of, intermediate punishment," the "caselaw reflects a variety of uses of the two terms in conjunction: at times probation is discussed as a form of intermediate punishment, while in other places the view is reflected that the two measures are distinct and may be imposed in sequence") (citations omitted).

In **Commonwealth v. Serrano**, 727 A.2d 1168, 1169 n.4 (Pa. Super. 1999), this Court criticized the inaccuracy of using the two terms interchangeably, notwithstanding their similarities. We observed that "the rule of resentencing following revocation of intermediate punishment is analogous to that set forth for resentencing following revocation of probation," but noted a different statutory provision governs each type of punishment. **Id.** (citation and quotation marks omitted). **Compare** 42 Pa.C.S. § 9754(b), (c) (governing conditions court may impose on probation) with **id.** at § 9763(b) (governing conditions court may impose on intermediate punishment).

_(Footnote Continued Next Page)_

Correctional Institution for a minimum period of [15] months to a maximum period of [5] years, with a Recidivism Risk Reduction Incentive (RRRI) aggregate sentence of [11] months and seven (7) days. Schmitz filed a post-sentence motion on November 1, 2019, which was expressly granted for reconsideration on November 18, 2019. A hearing on the motion was held December 19, 2019, and an order was filed on December 20, 2019, denying Schmitz's post-sentence motion. Schmitz filed a timely notice of appeal on January 2, 2020.[4]

*(Footnote Continued)* ─────────────────────────

Subsequent to Schmitz's resentencing following the revocation of his intermediate punishment, the Legislature amended the Sentencing Code. Effective December 18, 2019, "[s]ection 9763, which previously was titled 'Sentence of county intermediate punishment,' was retitled 'Conditions of probation,' and intermediate punishment is now classified as a type of probation." ***Commonwealth v. Hoover***, 231 A.3d 785, 790 (Pa. 2020) (Opinion Announcing the Judgment of the Court). A plurality of the Court acknowledged that "[c]ounty intermediate punishment programs are similar to traditional probation sentences" and observed that the 2019 legislative amendments now bring county and state intermediate punishment programs "under the umbrella of probation." ***Id.*** (citation omitted). Thus, many of the distinctions between intermediate punishment and probation have been eliminated.

The imposition and revocation of the intermediate punishment sentence in the instant case preceded this amendment, and all citations to the Sentencing Code are to the version that expired on December 17, 2019, and were in effect at the time of the imposition and revocation of Schmitz's intermediate sentence, unless otherwise specified. Neither the revocation court nor the parties discuss intermediate punishment or any distinction between probation imposed on its own and probation imposed as part of an intermediate punishment sentence. Because probation and intermediate punishment are similar, we draw from cases applicable to probation, but note any distinction applicable to intermediate punishment.

[4] On January 31, 2020, this Court issued a rule to show cause why this Court should not quash Schmitz's January 2, 2020 notice of appeal as untimely filed from the October 22, 2019 judgment of sentence in light of Pa.R.Crim.P. 708(e), which provides that the "filing of a motion to modify sentence [after a revocation of probation or intermediate punishment] will not toll the 30-day appeal period." In Schmitz's response to the rule to

*(Footnote Continued Next Page)*

5

Revocation Court Opinion, 2/21/2020, at 1-2 (unnecessary capitalization omitted; party designation altered). Both Schmitz and the revocation court have complied with Pa.R.A.P. 1925.

On appeal, Schmitz does not challenge the revocation court's determination that he violated condition 17. Instead, he contends his county probation officer lacked authority to impose condition 17 because only the sentencing court could impose conditions upon his probation.[5] Schmitz's Brief at 15. Accordingly, Schmitz asks us to decide whether the revocation court erred in revoking his probation based upon this impermissibly imposed condition. Schmitz's Brief at 15.

In reviewing this issue, we bear the following in mind.

> Our Court has held that the revocation of a county intermediate punishment sentence is equivalent to the revocation of probation. An intermediate punishment sentence imposed pursuant to 42 Pa.C.S. § 9763 may be revoked where the specific

*(Footnote Continued)* ———————————

show cause and in his brief, he agrees the 30-day appeal period set forth in Pa.R.A.P. 903(a) is not tolled merely by filing a post-sentence motion. Nevertheless, Schmitz points to the revocation court's express grant of reconsideration issued on November 18, 2019, and argues the express grant of reconsideration re-sets the appeal period. Schmitz is correct, and we need not quash his appeal. *See* Pa.R.Crim.P. 708, Note ("Any appeal must be filed within the 30-day appeal period unless the sentencing judge within 30 days of the imposition of sentence expressly grants reconsideration or vacates the sentence. *See **Commonwealth v. Coleman***, 721 A.2d 798, 799, [n]2 (Pa. Super. 1998). *See also* Pa.R.A.P. 1701(b)(3).").

[5] Like the revocation court, Schmitz refers to the revocation of probation, not revocation of intermediate punishment.

conditions of the sentence have been violated. "Upon revocation, the sentencing alternatives available to the court shall be the same as the alternatives available at the time of initial sentencing." 42 Pa.C.S. § 9773. This rule of resentencing is analogous to that set forth for resentencing following revocation of probation. Moreover, revocation of probation occurs, as does revocation of an intermediate punishment sentence, where it has been found the defendant has violated the terms of his sentence.

*Commonwealth v. Melius*, 100 A.3d 682, 685-86 (Pa. Super. 2014) [(brackets and ellipses omitted)].

Revocation of a county [intermediate punishment] sentence is governed by 42 Pa.C.S. § 9773, which provides in relevant part:

Revocation. -- The court may revoke a sentence of county intermediate punishment upon proof of a violation of specific conditions of the sentence. Upon revocation and subject to section 9763(d), the sentencing alternatives available to the court shall be the same as the alternatives available at the time of initial sentencing.

42 Pa.C.S. § 9773(b). In an appeal [from a judgment of sentence following the revocation of intermediate punishment], we may review the validity of the revocation proceedings, as well as the legality and discretionary aspects of any new sentence imposed. *Commonwealth v. Cartrette*, 83 A.3d 1030, 1033-34 (Pa. Super. 2013) (*en banc*).

*Commonwealth v. Banks*, 198 A.3d 391, 397-98 (Pa. Super. 2018).

"[R]evocation … is a matter committed to the sound discretion of the trial court and that court's decision will not be disturbed on appeal in the absence of an error of law or an abuse of discretion." *Commonwealth v.*

7

*Shires*, 240 A.3d 974, 977 (Pa. Super. 2020) (internal brackets, quotation marks and citations omitted).

At the time Schmitz's intermediate punishment was imposed, the Sentencing Code permitted courts to "attach" any of the 17 enumerated "conditions upon the defendant as it deems necessary," including a condition "[t]o participate in drug or alcohol screening and treatment programs, including outpatient and inpatient programs." 42 Pa.C.S.A. § 9763(b). *Cf.* 42 Pa.C.S.A. § 9754(b) (providing that sentencing courts may set forth "reasonable conditions [of probation] authorized by subsection (c) of this section as it deems necessary to insure or assist the defendant in leading a law-abiding life"); *id.* at § 9754(c) (setting forth 14 conditions of probation available to the sentencing court, including "[t]o participate in drug or alcohol screening and treatment programs, including outpatient and inpatient programs"). "The court may revoke a sentence of county intermediate punishment upon proof of a violation of specific conditions of the sentence." *Id.* at § 9773; *cf.* 42 Pa.C.S.A. § 9771(b) (authorizing the court to revoke probation based "upon proof of the violation of specified conditions of the probation").

It does not appear that Pennsylvania courts have considered the precise question implicated by Schmitz's appeal, which is whether a court may revoke an intermediate punishment sentence based upon a defendant's violation of a condition imposed by a county probation department in

conjunction with the probation portion of an intermediate punishment sentence.

In **Commonwealth v. Elliott**, 50 A.3d 1284 (Pa. 2012), our Supreme Court held that a trial court may revoke a sentence of probation based upon the violation of a condition of supervision imposed by a state probation agency, so long as the condition of supervision is germane to, elaborates on, or interprets a court-imposed condition of probation. Schmitz argues that **Elliott** is not applicable to his situation. He makes this argument not because **Elliott** involved a probation sentence unconnected to an intermediate punishment sentence, but because **Elliott** examined statutory authority applicable only to state probation and parole officers and not county probation officers. Specifically, he points out that condition 17 was imposed by the Department, a county probation office, and the **Elliott** Court relied upon sections 6131 and 6151 of the Prisons and Parole Code, which is applicable only to state parole and probation agents of the State Probation and Parole Board. Schmitz's Brief at 15. Therefore, we examine **Elliott** to determine whether it applies to a probation sentence imposed as part of an intermediate punishment sentence and a condition of that probation imposed by a county probation officer.

In **Elliott**, our Supreme Court examined "the relationship between 'terms and conditions of probation,' as used in [s]ections 9754 and 9771 of the Sentencing Code, which a trial court imposes, and 'conditions of

supervision' as contemplated by the Prisons and Parole Code, which the Board and its agents execute." *Elliott*, 50 A.3d at 1290. In general "under the language provided by the Sentencing Code, specifically [s]ections 9751 and 9771,[6] … only 'the court, not the probation offices and not any individual probation officers, may impose the terms and conditions of probation.'" *Id.* at 1291 (quoting *Commonwealth v. MacGregor*, 912 A.2d 315, 317 (Pa. Super. 2006) (brackets omitted)).

However, the Court observed that sections 6131 and 6151 of the Prisons and Parole Code mandate that the Board and its agents establish uniform standards for the supervision of probationers under its authority and implement those standards and conditions. *See* 61 Pa.C.S.A. §§ 6131(a)(5)(ii), 6151. To reconcile both statutes, our Supreme Court concluded that while only the trial court could set conditions of probation, "the Board and its agents may impose conditions of supervision that are germane to, elaborate on, or interpret any conditions of probation that are imposed by the trial court." *Elliott*, 50 A.3d at 1292. In other words, the "trial court may impose conditions of probation in a generalized manner, and the Board or its agents may impose more specific conditions of supervision,

---

[6] *See* 42 Pa.C.S.A. § 9751 ("The judge who presided at the trial or who received the plea of the defendant shall impose the sentence unless there are compelling reasons that preclude his presence."); *id.* at § 9771 (providing the court with the power to modify the conditions of probation by increasing or lessening the conditions and to revoke probation "upon proof of the violation of specified conditions of the probation").

10

so long as these supervision conditions are in furtherance of the trial court's conditions of probation." *Id.* Accordingly, "'a probationer may be detained, arrested, and 'violated' for failing to comply with either a condition of probation or a condition of supervision," as long as the condition of supervision does not exceed the Board's authority to impose it." *Shires*, 240 A.3d at 978 (quoting *Elliott*, 50 A.3d at 1292).

Because the Sentencing Code reserves the ability to impose conditions on an intermediate sentence to the trial court in a similar fashion as it does for conditions of probation, we determine the reasoning used in *Elliott* applies to sentences including probation as part of an intermediate punishment sentence. In the instant case, the sentencing court invoked the court's express statutory authority in section 9763 of the Sentencing Code, which permitted it to order attendance of treatment and addiction programs as a condition of intermediate punishment, to impose condition 10. Condition 10 ordered Schmitz to attend and complete programs deemed appropriate by the Centre County Probation and Parole Department and as recommended by the Centre County DUI Court Team. This condition, which required proof of attendance, is a way of ensuring that Schmitz did in fact attend and complete the programs. It is plain that condition 17 is germane to and elaborated on condition 10 imposed by the sentencing court.

However, as Schmitz notes, condition 17 was imposed by a county probation and parole department. The *Elliott* Court initially phrased the

question it was examining broadly and included county probation offices and agents. *See id.* at 1289("[W]hether the Board, **county probation offices**, or the agents and officers thereof, can impose conditions upon probationers that are not explicitly delineated in a trial court's sentencing and probation order[.]") (emphasis added). But Schmitz is correct that *Elliott*'s reasoning heavily relied upon the authority provided solely to the state probation board, not county probation boards, in the Prisons and Parole Code, based upon the facts of that case. *See* 61 Pa.C.S.A. § 6101 (defining the term "board" as the "Pennsylvania Parole Board"). Specifically, the Supreme Court found it significant that "provisions of the Prisons and Parole Code [] mandate the Board and its agents to establish uniform standards for the supervision of probationers under its authority, and further to implement those standards and conditions." *Elliott*, 50 A.3d at 1291 (citing 61 Pa.C.S.A. § 6131(a)(5)(ii) (effective 10/13/2009 to 2/17/2020) ("The board shall have the power and its duty shall be … [t]o establish, by regulation, uniform Statewide standards for … [t]he supervision of probationers.") and *id.* at § 6151 (defining conditions of supervision as "any terms or conditions of the offender's supervision, whether imposed by the court, the board or an agent, including compliance with all requirements of Federal, State and local law")). It was these two provisions that caused our Supreme Court to reject the view that a probation officer only has the power to enforce conditions of probation as opposed to imposing and enforcing conditions of supervision.

12

*Elliott*, 50 A.3d at 1292. To find that probation officers only can enforce the court's conditions of probation, the Court said, would require the Court to ignore subsection 6131(a)(5)(ii) and section 6151. *Id.* The Court concluded its approach of distinguishing between conditions of **probation** versus conditions of **supervision** gave credence to all of the statutory provisions at issue in the Crimes Code and the Prisons and Parole Code. *Id.*

An entirely different statutory scheme applies to county probation officers. That scheme is set forth in subchapter A of Chapter 99 of the Judicial Code. Like section 6151 of the Prisons and Parole Code, section 9911 of the Judicial Code defines "conditions of supervision." *Compare* 61 Pa.C.S.A. § 6151 (defining conditions of state supervision as "any terms or conditions of the offender's supervision, whether imposed by the court, the board or an agent, including compliance with all requirements of Federal, State and local law"; defining agent as "[a] State parole agent appointed by the board"), *with* 42 Pa.C.S.A. § 9911 (defining conditions of county supervision as "[a]ny terms or conditions of an offender's supervision whether imposed by the court or an officer, including compliance with all requirements of Federal, State and local law"; defining officer as a "probation or parole officer appointed or employed by any court or by any county department of probation and parole to supervise persons released on county probation or parole"). Both codes provide that probation officers are in supervisory relationships to offenders and contain identical language

13

stating that the purpose of the "supervision is to assist the offenders in their rehabilitation and reassimilation into the community and to protect the public." 61 Pa.C.S.A. § 6151; 42 Pa.C.S.A. § 9912. Both codes declare probation officers to be peace officers with police power and authority to arrest certain persons on probation for any violation of the probation. *See* 61 Pa.C.S.A. § 6152; 42 Pa.C.S.A. § 9913. The statutory schemes differ, however, insomuch as the Judicial Code does not contain a provision equivalent to subsection 6131(a)(5)(ii) of the Prison and Parole Code providing specific power to county probation departments to establish uniform standards for the supervision of probationers.

It is unclear how much the absence of statutory authority to establish uniform "standards" would have impacted our Supreme Court's analysis in *Elliott*, as every time it discussed subsection 6131(a)(5)(ii) it also mentioned section 6151 pertaining to conditions of supervision. The term "standards" is not defined in the Prison and Parole Code. It is unclear whether our Supreme Court deemed standards to be equivalent to conditions. Furthermore, our Supreme Court explicitly noted as part of its analysis that its interpretation permitted "the Board and its agents to evaluate probationers on a one-on-one basis to effectuate supervision," which suggests it may have been relying on more than just the Board's ability to impose a uniform statewide standard. *Elliott*, 50 A.3d at 1292.

14

Schmitz's argument does not address or analyze the statutory authority of county probation officers. Instead, he baldly asserts, "[a] mere county probation officer, lacking any statutory authority to impose a condition of any kind is simply not competent to do anything other than supervise and compel adherence to what the sentencing court itself has told the probationer to do." Schmitz's Brief at 15. This argument fails to convince us that county probation departments lack any authority to impose conditions of supervision. The legislature specifically defined "conditions of supervision" and gave probation officers the power to conduct personal and property searches for suspected violations of the conditions of supervision. *See* 42 Pa.C.S.A. §§ 9911, 9912. It would be illogical to permit a probation officer to search the person of a probationer for compliance with a condition of supervision the probation officer had no authority to impose.

Accordingly, having been provided with no convincing reason why *Elliott*'s reasoning does not apply to county probation officers, we decline to declare otherwise at this time, and affirm the sentencing court's determination that failure to comply with condition 17 could serve as a basis for revoking Schmitz's intermediate punishment.[7]

---

[7] Additionally, even assuming *arguendo* that county probation officers do not have authority to impose conditions of supervision, Schmitz's intermediate punishment was revoked in part due to his failure to comply with the DUI court-ordered condition to complete the enhanced attendance sheets that had been imposed as a sanction. Schmitz failed to obtain signatures
*(Footnote Continued Next Page)*

15

Judgment of sentence affirmed.

Judge McLaughlin files a concurring memorandum.

Judge Strassburger did not participate in the consideration or decision of this case.


Judgment Entered.

*[signature]*

Joseph D. Seletyn, Esq.
Prothonotary


Date: 04/23/2021

---

*(Footnote Continued)*

verifying his attendance at meetings. As a result, he received a court-ordered sanction for violating condition 17, which he did not challenge. As part of the sanction, the DUI court ordered Schmitz to complete enhanced attendance sheets. Schmitz failed to do so, resulting in revocation of his intermediate punishment sentence due to violation of the court-imposed sanction **and** condition number 17. Since he did not challenge condition 17 at the time he was sanctioned in September 2019, he cannot now challenge the revocation of his intermediate punishment based in part upon his failure to comply with that court-ordered sanction.